378 So.2d 1002 (1979)
HERLITZ CONSTRUCTION COMPANY, INC.
v.
CLEGG CONCRETE, INCORPORATED.
No. 12901.
Court of Appeal of Louisiana, First Circuit.
November 12, 1979.
Rehearing Denied December 27, 1979.
*1003 Ralph E. Hood, Baton Rouge, of counsel, for plaintiff-appellee, Herlitz Const. Co.
Michael V. Clegg, Paul Marks, Jr., Baton Rouge, of counsel, for defendant-appellant, Clegg Concrete, Inc.
Before EDWARDS, LEAR and SARTAIN, JJ.
LEAR, Judge.
This is a suit for damages resulting from a breach of contract.
Clegg Concrete, Inc. (defendant-appellant) appeals a judgment awarding damages to Herlitz Construction Company, Inc. (plaintiff-appellee) in the amount of Twenty-two Thousand Five Hundred Fifty-one and 11/100 ($22,551.11) Dollars with legal interest from January 13, 1978 until paid and all costs. We affirm in part, reverse in part and remand.
Appellee is a subcontractor who had been engaged on the Cortana Mall project, in Baton Rouge, to perform the foundation work for the structural connection between Cortana Mall and Wilson's Jewelers. Under a verbal contract with appellee, appellant agreed to supply concrete to be used in this project to construct certain support pilings called caissons. Appellee's subcontract agreement with the general contractor specified that the concrete used in these caissons have a compressive strength of 3,000 pounds per square inch (P.S.I.). Although there is a conflict in the testimony regarding whether this particular specification was communicated to appellant, the evidence is clear that appellee's order specifying *1004 five bag, with air, slump of three inches should have yielded concrete having a 3,000 P.S.I. compressive strength.
The testing of cylinders taken from each of the concrete trucks revealed that one of the trucks delivered a load of concrete having a compressive strength of only 1,500 P.S.I. to 1,700 P.S.I. This finding was confirmed by further testing of core samples which were obtained directly from the caissons. Appellee's president testified that based on these test results, the general contractor ordered the performance of some corrective work consisting of the installment of sister footings which aid in distributing the weight supported by the caissons containing the deficient concrete. This proceeding was initiated to recover the expenses incurred in performing this corrective work. These expenses were itemized as follows:

 1. Plaintiff's labor costs for corrective
 work ..................................... $ 7,846.20
 2. Plaintiff's material costs for corrective
 work ..................................... 3,830.05
 3. Sublet work costs for corrective
 work ...................................... 745.50
 4. Additional costs of project due
 to delay .................................. 4,302.06
 5. Costs for supervision, by general
 contractor, of corrective work ............ 780.00
 6. Costs of coreing, testing and analyzing
 defective concrete ....................... 1,636.00
 7. Costs for redesign of drilled
 footings .................................. 1,708.18
 8. Cost of extra dirt fill needed
 due to delay .............................. 4,083.12
 __________
 TOTAL ......................... $27,363.32

The trial court found that appellant was responsible for the deficiency in the compressive strength of the concrete and awarded damages to appellee in the amount of Twenty-two Thousand Five Hundred and Fifty-one and 11/100 ($22,551.11) Dollars. The trial court in granting this award, disallowed Item 5 of appellee's itemized damages list and limited Item 6 to Thirty-six ($36.00) Dollars to reflect amounts actually expended by appellee.
On appeal, appellant's specification of errors presents the following issues: (1) Whether the trial court committed manifest error in finding that appellee satisfied its burden of proof as to damage, and (2) whether certain invoices and notations introduced into evidence by appellee constitute competent evidence of damages. We note that it has not been urged that the trial court erred in finding that appellant was responsible for the deficiency in the compressive strength of the concrete. However, in brief appellant alludes to other possibilities for the deficiency in the concrete. Consequently, we reviewed the entire record on this issue and do not find error in the trial court's conclusion.
Appellant alleges that in order to recover damages, appellee has the burden of showing that the damage was occasioned by defendant's fault as well as the necessity for the corrective work. Appellant further contends that appellee has failed to establish those requirements by a preponderance of the evidence. We find that in rendering judgment in favor of appellee, the trial court evidently concluded that appellee's burden of proof had been satisfied. This conclusion involved factual determinations of the trier of fact which cannot be disturbed on appeal absent a showing of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
It is well settled that where remedial work not contemplated by a subcontract is required to complete a project in accordance with specifications, the cost of such remedial work must be borne by the party at fault. Alumaglass Corp. v. Administratrix of Succession of Kendrick, 303 So.2d 911 (La.App.1st Cir., 1974).
On appeal, appellant's fault in delivering deficient concrete is not disputed. However, the central question remains whether the necessity for the corrective work resulted from appellant's fault. The evidence clearly establishes that due to test results indicating a deficiency in the compressive strength of the concrete, appellee was required by the general contractor to *1005 perform corrective work not contemplated by the subcontract. The evidence additionally shows that appellee complied with this request and erected several sister footings to aid in distributing the weight supported by the caissons containing the deficient concrete. Furthermore, there is no testimony in the record indicating that these remedial repairs were unnecessary or unreasonable. On the contrary, it is self-evident that since the concrete used in the caissons did not meet the compressive strength specifications, remedial work was necessary to enable the caissons in question to support the designated weight.
After thoroughly reviewing the entire record, we cannot say that the trial court erred in concluding the evidence sufficient to establish that the remedial repairs were necessary and resulted from appellant's fault.
Appellant additionally urges that the trial court erred in admitting, over objection, certain third party invoices and other written notations allegedly representing expenses incurred in performing the corrective work. Appellant contends these items constitute inadmissible hearsay evidence.
The record reflects that appellee's proof of damages consisted of testimony by appellee's treasurer, Mr. Bennett, verifying appellee's time sheets, third party invoices and notations of amounts owed to third parties made under appellee's letterhead. Appellee contends that these evidentiary items were admissible under the business records exception to the hearsay rule.
The business records exception to the hearsay rule, as all other exceptions, is predicated upon considerations of reliability and necessity. Although the nature and scope of the exception in Louisiana civil cases is suspect in light of Louisiana Civil Code Articles 2248[1] and 2249,[2] modern Louisiana jurisprudence has greatly restricted the application of these articles. Pritchard v. Wolfe, 230 So.2d 612 (La.App.3d Cir., 1970).
The modern jurisprudence is well summarized in 21 La.L.Rev. 449 (1961) which states:
"Records of industrial and commercial organizations, as well as medical reports and hospital records are admissible as proof of their assertions if: (1) persons concerned with recording the information are unavailable for testimony, or production of such persons would be a needless burden; (2) the first collected record available to or usable by the court is introduced; (3) the records are identified at the trial by one familiar with the bookkeeping procedure; and (4) the evidence seems reliable after considering such factors as (a) contemporaneousness of the entry with the occurrence or fact recorded, (b) first-hand knowledge of the entrant, (c) existence of a business or professional duty to record or report the facts in the regular course of business, (d) completeness and honest appearance of the books, (e) absence of fraud in making the entries or in destroying the supporting memoranda, and (f) perhaps, whether the books belong to a third party."
Applying the foregoing principles to the facts of this case, we find that the trial court erred in admitting into evidence the third party invoices and the notations appearing under appellant's letterhead.
Initially, we note that appellant does not contend that its own invoices to appellee were inadmissible. Clearly, these are admissible as admissions and appellee is entitled to recover the sum of One Thousand Five Hundred and Fifty-three and 63/100 ($1,553.63) Dollars represented by those invoices.
*1006 Additionally, we find that appellee's time sheets representing labor expenses were properly admitted by the trial court under the business records exception. These time sheets constitute the original records of the labor involved in the remedial repairs and were properly identified by appellee's treasurer. Furthermore, appellant had an opportunity to cross examine appellee's treasurer as to the accuracy of the records. Therefore, appellee is also entitled to recover the sum of Seven Thousand Eight Hundred Forty-six and 20/100 ($7,846.20) Dollars as reflected by the time sheets.
Turning to the third party invoices, appellee supports the propriety of admission by arguing that these third party invoices became part of its own business records and were identified at trial by its treasurer. We disagree with appellee's contention that the third party invoices comprised part of its business records. Moreover, appellee's treasurer lacked knowledge to testify as to the third party's procedures in preparing invoices. Consequently, the accuracy of the invoices was not verified at trial. Although third party records have been held admissible, the reliability of the records, in those cases admitting them, was supported by the testimony of the third parties. Sturgis v. Imperial Hotel, 144 So. 268 (La.App.2d Cir., 1932) and Alpaugh v. Krajear, 57 So.2d 700 (La.App.Orleans, 1952). Under the facts of this case, the element of reliability is lacking and compels us to find that the trial court erred in admitting the third party invoices.
Appellant additionally opposes the introduction into evidence of appellee's notations listing amounts allegedly owed to third parties in connection with the remedial repairs. There is no proof that these notations constitute records kept in the regular course of appellee's business. On the contrary, these materials appear to have been prepared for purposes of trial and lack sufficient reliability to justify admission under the business record exception.
For the foregoing reasons, it is adjudged, decreed and rendered that:
(1) the trial court's holding as to appellant's liability is affirmed;
(2) the trial court's award of damages is reduced to Nine Thousand Three Hundred Ninety-nine and 83/100 ($9,399.83) Dollars, and
(3) the case is remanded to the trial court for receiving more evidence on the other items of damage.
All costs of this appeal are assessed equally against appellant and appellee.
AFFIRMED in part; REVERSED in part; REMANDED.
NOTES
[1] Art. 2248. The books of merchants can not be given in evidence in their favor; they are good evidence against them, but if used as evidence, the whole must be taken together.
[2] Art. 2249. Domestic books and papers are no proof in favor of him who has written them; they are proofs against him:

1. In all cases where they formally declare a payment received.
2. When they contain an express mention that the minute was made to supply the want of a title in favor of him for whose advantage they declare that an obligation was made.