393 So.2d 877 (1981)
Willie MILES and Janice M. Miles
v.
NEW ORLEANS PUBLIC SERVICE, INC.
No. 11465.
Court of Appeal of Louisiana, Fourth Circuit.
January 13, 1981.
*878 Joseph W. Thomas, New Orleans, for plaintiffs-appellees.
James Maher, III, New Orleans, for defendant-appellant.
Before GULOTTA, SCHOTT and SARTAIN, JJ.
GULOTTA, Judge.
Defendant appeals from a $909.52 automobile property damage award. This amount represents $499.79 in automatic transmission repairs and $410.43 in body repairs to the vehicle.[1] The appeal is solely on quantum.
While plaintiff's automobile was parked and unoccupied, with the automatic transmission gear in park, a Public Service bus executing a turn locked bumpers and dragged the automobile about eight feet backward. Defendant claims the trial judge erred in admitting into evidence the body repair estimates from John Gimma Pontiac since the body shop manager who made and signed the estimate soon after the accident was not called to testify. According to defendant, identification of the document by a different body shop manager employed at Gimma's at the time of trial, who did testify, did not cure the defect of inadmissibility.
Concerning the cost of transmission repair, defendant complains the trial judge erred in accepting as an expert the mechanic who repaired the transmission and identified the repair receipt. Defendant argues that this witness had received no formal training in transmission repairs but only on-the-job training and was not qualified to testify as an expert on causes of transmission damage, which is more properly the expertise of an engineer and not a mechanic. Defendant further points out that this witness testified that damage normally results to an automatic transmission when the gear is in park and the automobile is dragged forward. Because the evidence showed the automobile was actually dragged backward, defendant argues no weight should have been given to this witness' testimony relating to causation between the accident and the transmission problem.
Alternatively, defendant contends that because the automobile had traveled a distance of approximately 47,000 miles at the time of the accident, and the transmission was nearly 50% depreciated, an award should have been made in the sum of $250.00 rather than the $500.00 figure.
Although we find no merit to the arguments relating to the transmission repair, we conclude that the body repair estimate was inadmissible hearsay and we reduce the judgment accordingly.
The accident occurred on May 7, 1978. On June 1, 1978 a written estimate of body repair cost was made by John Gimma, Inc. through its body shop manager at Gimma Pontiac, Walter Marland. This estimate prepared for Janice M. Miles itemized the cost of repairing damage to the rear bumper, rear parking light, quarter panel, side molding, right rear door, and door edge molding. Although Marland did not testify at trial or identify the document, the body shop manager at Gimma Pontiac at the time of the trial did. He stated that he was familiar with the document, that Walter Marland had been the service manager at the time the estimate was made, and that *879 this form was used and made in the regular course of Gimma's business.
When the document was offered into evidence in connection with the testimony of the body shop manager, the trial judge sustained the objection to its admissibility. The document was then offered as a proffer. After the document was identified by Janice Miles, who had received the estimate from Marland, and by Willie Miles, who stated that the estimate was obtained by his wife at his request, the trial judge admitted it into evidence.
On its face, a written estimate of property damage prepared by a third party is hearsay and a plaintiff is not permitted to testify concerning it where no repairs are made. Green v. Clark, 306 So.2d 396 (La. App. 4th Cir. 1975). Such an estimate has been excluded where the plaintiff fails to call as a witness the person who made it or to explain why he was not available to testify. Ordonez v. Maryland Casualty Company, 312 So.2d 875 (La.App. 4th Cir. 1975).
Although conceding in his supplemental memorandum that an unauthenticated repair estimate is hearsay, plaintiff argues that the estimate is admissible under the "business records" exception to the hearsay rule. According to plaintiff, since John Gimma, Inc.'s agent identified the document as one of its estimates that had been prepared by a former employee, the document is trustworthy and should be admitted. We disagree.
Under the business records exception to the hearsay rule, which is recognized in Louisiana jurisprudence, a record prepared in the regular course of business is admissible, even though the person who prepared it does not testify, where such person is unavailable for testimony, where the first collected record available to or usable by the court is introduced, where such record is identified at trial by a person familiar with the procedure of its preparation, and where the evidence seems reliable. Indicia of reliability are that the record was prepared at or near the time of the occurrence recorded, that there was a business or professional duty to record the facts in the regular course of business, that the record appeared complete and honest, and that no fraud is present. Herlitz Const. Co. v. Clegg Concrete, Inc., 378 So.2d 1002 (La.App. 1st Cir. 1979). See also, Comment: Business Records in Louisiana as an Exception to the Hearsay Rule, 21 La.L.Rev. 449, 459-460.
In our case, plaintiff has simply failed to show that Walter Marland, the body shop manager who prepared the estimate shortly after the accident, could not testify at trial. Marland's unavailability as a witness is a sine qua non for a business records exception. Although a different body shop manager identified the repair estimate and testified that Marland was no longer employed by John Gimma, Inc. no other testimony was introduced to show Marland could not testify. We cannot say that the termination of his employment by itself makes him unavailable.
Our case is clearly different from Cascio v. Standard Oil Co. of New Jersey, 32 So.2d 66 (La.App.1947) in which a medical report by a company physician was held admissible, even though the physician himself did not testify, where he had died before trial and his signature was identified by another company doctor. We likewise distinguish Royal Products, Inc. v. Johnson, 191 So. 329 (La.App.1939), where books were held admissible without testimony of the preparing bookkeeper who was insane at the time of trial.
Accordingly, based on this failure of proof, we conclude that the business records exception does not apply in our case and that the trial judge erred in admitting the repair estimate into evidence.
On the other hand, we find no error on the part of the trial judge in accepting the expert testimony of John L. Lesky, the mechanic who repaired the transmission. No objection was made at the time that the court accepted this witness as an expert. Furthermore, Lesky testified that he had repaired the transmission and identified the transmission parts that were removed from *880 the Miles automobile. He stated that he had worked on automobiles for approximately sixteen years and has worked with automobile transmissions for the past four or five years.
Although Lesky had never taken any courses on repairing Pontiac transmissions, he had repaired approximately 100 to 200 transmissions. He was the owner of Approved Transmission Service where the repairs were made and had acquired his expertise through work on-the-job. He testified also that he had supervised other people working on automobiles and worked as his own boss doing automobile repair work for about a year. Under these circumstances, we cannot say the trial judge abused her discretion in accepting Lesky as an expert. See Catalanotto v. Hebert, 347 So.2d 301 (La.App. 4th Cir. 1977).
According to Lesky, when an automobile is hit and dragged eight feet from a parked position with the gear shift in park, the transmission would "break completely." He stated that dragging of an automobile under those circumstances causes a crack in the rear gear piston resulting in transmission damage. Lesky had never seen a transmission ring break in any other way than by dragging it while the gear was in park. Since the expert testified that transmission damage would result when the automobile is dragged forward and other testimony established only that the automobile was dragged backward, defendant argues that plaintiff failed to establish causation between the dragging of the automobile and the transmission damage. We disagree.
In truth and in fact, Lesky testified only that transmission damage would result when an automobile is dragged eight feet from a parked position with the automatic transmission gear in park. He did not differentiate whether such dragging was forward or backward. His testimony was only that dragging an automobile a distance of eight feet with the transmission in park would result in complete breaking of the transmission and that he felt that is what happened to plaintiff's car. Later in his testimony he indicated that forward movement of the automobile over a distance of six inches might produce the same result. We might point out that no evidence was submitted by defendant to contradict the expert mechanic's testimony. Under these circumstances we find no error on the part of the trial judge in concluding that causation between the accident and resulting transmission damage was established.
Finally, we reject defendant's contention that because the mechanic testified that the life of a transmission may be in excess of 100,000 miles, and the automobile had traveled approximately 47,000 miles, the $500.00 cost of repairs should be reduced to $250.00 thereby, reflecting an approximately 50% depreciation of the transmission. This argument is based upon complete conjecture and is without merit.
Because we find the body repair estimate is inadmissible, there is a failure of proof concerning that aspect of the damages to the vehicle. Accordingly, we deduct from the total award that portion representing the cost of body repairs, but affirm that portion of the award representing the cost of transmission repairs.
We therefore reduce the total judgment of $909.52 to the sum of $499.79. In all other respects, however, the judgment is affirmed.
AMENDED AND AFFIRMED.
NOTES
[1] According to our calculations the total is $910.22 and not $909.42 as awarded.