401 So.2d 1231 (1981)
THEUS, GRISHAM, DAVIS & LEIGH, Plaintiff-Appellee,
v.
Lynda Amacker DEDMAN and Lansing Maxwell Dedman, Defendants-Appellants.
LAW OFFICES OF WILLIAM R. COENEN, Plaintiff-Appellee,
v.
Lynda Amacker DEDMAN and Lansing Maxwell Dedman, Defendants-Appellants.
Nos. 14550, 14551.
Court of Appeal of Louisiana, Second Circuit.
June 8, 1981.
*1232 F. Murry Biedenharn, Monroe, for defendant-appellant, Lynda Dedman.
Marshall Blackwell, Monroe, for defendant-appellant, Lansing Dedman.
Theus, Grisham, Davis & Leigh by J. Michael Hart, for plaintiff-appellee, Theus, Grisham, Davis & Leigh.
Law Offices of William R. Coenen by William R. Coenen, Jr., for plaintiff-appellee, Law Offices of William R. Coenen.
Before MARVIN, JASPER E. JONES, and FRED W. JONES, Jr., JJ.
MARVIN, Judge.
In each of these consolidated cases, a divorced couple appeals a judgment for attorney fees awarded the respective attorneys for representing the defendant ex-wife during the stormy years of the marriage in her cases against the defendant ex-husband. After the husband and wife reconciled for a brief time following the representation sued upon, the husband and wife were divorced in another proceeding and these attorneys brought suit for the balance owed for their representation. With an amendment to one judgment, we affirm both.
The judgments were in favor of attorney Coenen for $517 and in favor of the second firm of attorneys for $2,583. Defendants contend that the judgments are based on inadmissible hearsay evidence and that the expenditures charged to or against the client should have been proved by the best evidence.
Mrs. Dedman first retained attorney Coenen in 1978, paying him a $1,000 retainer to offset his $45 per hour charge for his services and expenditures for Mrs. Dedman. With her knowledge, Coenen hired Southern Research Company to investigate her *1233 claims that Mr. Dedman was committing adultery. Coenen kept daily records of his time, services, and expenditures and expenses. His charges eventually totaled $2,017 above the retainer.
Early in 1979, Mrs. Dedman discharged Coenen and retained the services of attorney Crawford and the plaintiff law firm in the consolidated suit. She paid this firm a retainer of $5,000 from which it was understood that Coenen was to be paid or partially paid the balance due on his services. Mrs. Dedman also understood that the investigative services of Southern Research Company were to be continued. Crawford also kept daily records of his time, services, expenditures and expenses.
Upon receiving the $5,000 from Mrs. Dedman, attorney Crawford, on March 1, 1979, wrote this letter of transmittal to attorney Coenen:
"As we discussed earlier this week, you will find enclosed our firm check for $1,500 representing a portion of the fees which Mrs. Dedman owes to you for services rendered in connection with her earlier divorce proceedings." Emphasis supplied.
On March 12, 1979, attorney Coenen wrote this letter of transmittal to Southern Research Company:
"You will find enclosed a check for $825.00 representing payment for services rendered in this matter on behalf of my client during the period February 1 through February 25, 1979. As I had no participation in the matters related to the prior balance of $643.56, I am not authorized to forward that amount at this time. I am certain, however, that this can be worked out in the near future." Emphasis supplied.
Each attorney introduced the invoice sent to Mrs. Dedman and daily records of time, services, and expenses expended for her.[1] *1234 Additionally, each attorney testified as to his method of keeping such records and as to the accuracy of the records. Defendants' objection generally was that the invoice and the daily records were hearsay and were not corroborated. Mrs. Dedman contradicted the time records and the attorneys' testimony but the trial court resolved this and other factual disputes in favor of the plaintiffs and against Mrs. Dedman.
On appeal Mrs. Dedman's attorneys argue that the record and invoices complained of are hearsay and additionally, that the cancelled checks or receipts for expenses paid by the respective attorneys are the best evidence of payment of such expenditures. At the same time she does not deny, but admits, numerous long distance telephone calls made to her by the attorneys, conferences, depositions, and other matters shown on the daily records, invoices, and testified to by the attorneys.
The best evidence rule was originally recognized to require production of the best evidence on a particular issue and to avoid the possibility of fraud by orally proving the contents of a writing.[2] Louisiana, like other states, has generally limited the applicability of the rule to cases where the content of a written instrument is at issue. The modern best evidence rule requires the production of an original writing where such writing is crucial to a material fact. As defendant's cited cases show, courts have consistently held that a written document is the best evidence of its content and require that document to be produced under the best evidence rule when the terms or meaning of the document are at issue.[3]
Here, there is no single document which would per se determine the issue of the services rendered and the expenditures made for Mrs. Dedman. This is not an instance where an original writing would definitively resolve the issue of the amount owed each attorney. Unlike the situation of a written contract, plaintiffs may attempt to prove the amount owed by any competent evidence. Defendants did not contend at the trial that cancelled checks or receipts were the documents at issue or that these things were available as the best evidence. Defendants' objection was "best evidence [and] hearsay". Even assuming the existence and availability of cancelled checks and receipts as evidence entitled to greater weight in overcoming a denial of expenditures, the existence of cancelled checks and receipts does not make applicable the best evidence rule to exclude other evidence of the making of expenditures.
The other evidence in these cases is the daily record of each attorney, the detailed summary invoice, and the testimony of the attorney, that at certain times "I performed these services, for this period of time, and I made, or caused to be made, these expenditures, for Mrs. Dedman." Under these circumstances, the best evidence rule or objection does not exclude or make this evidence *1235 inadmissible. See 21 Loyola L.R. 450 at p. 456 ff, McCormick on Evidence, chapter 23 at p. 559 et seq. and authorities cited therein.
Defendants' remaining objection is that such evidence was inadmissible hearsay. In Herlitz Const. Co. v. Clegg Concrete, Inc., 378 So.2d 1002 (La.App. 1st Cir. 1979), the state of the law on the admissibility of business records was summarized:
"The business records exception to the hearsay rule, as all other exceptions, is predicated upon considerations of reliability and necessity. Although the nature and scope of the exception in Louisiana civil cases is suspect in light of Louisiana Civil Code Articles 2248 and 2249, modern Louisiana jurisprudence has greatly restricted the application of these articles. Pritchard v. Wolfe, 230 So.2d 612 (La. App. 3d Cir. 1970).
"The modern jurisprudence is well summarized in 21 La.L.Rev. 449 (1961) which states:
"`Records of industrial and commercial organizations, as well as medical reports and hospital records are admissible as proof of their assertions if: (1) persons concerned with recording the information are unavailable for testimony, or production of such persons would be a needless burden; (2) the first collected record available to or usable by the court is introduced; (3) the records are identified at the trial by one familiar with the bookkeeping procedure; and (4) the evidence seems reliable after considering such factors as (a) contemporaneousness of the entry with the occurrence or fact recorded, (b) first-hand knowledge of the entrant, (c) existence of a business or professional duty to record or report the facts in the regular course of business, (d) completeness and honest appearance of the books, (e) absence of fraud in making the entries or in destroying the supporting memoranda, and (f) perhaps, whether the books belong to a third party.'" 378 So.2d at p. 1005.
See also Talley v. Duplantis, 213 So.2d 82 (La.App. 1st Cir. 1968), where the court admitted ledger sheets made from delivery tickets where such records were kept in the ordinary course of business, there was no indication of fraud or ill practice, and the preparer of the documents testified as their accuracy and authenticity.
Records kept by an attorney on a daily basis to aid in the valuation and the accounting of his services to his clients in the ordinary course of the attorney's business are admissible under the business records exception to the hearsay rule. Each attorney testified that he had kept the daily record and that the daily record accurately reflected the work performed. There are no allegations of fraud or ill practices and each attorney was subject to cross examination. Records of this type, bearing the indicia of accuracy and reliability, must be admissible as a practical matter.
The invoice, while cumulative of the daily record in one sense, is also admissible under the business records exception. Crawford testified that the invoice was a summary prepared from the daily time sheets and that they accurately accounted for the work performed. Coenen testified similarly as to his records. Such invoices are regularly prepared in the legal profession for the purpose of billing and informing clients of the efforts and expenditures made on behalf of the client. Summaries of voluminous records are admissible where the preparer is available for cross examination and the original materials are available for examination by the opposing party. See Tomeny, "Best Evidence and Authentication of Documents", 21 Loyola Law Review 450, 459 (1975) and authorities cited therein. We find no error in the trial court's determination that defendants owe for the hours billed, the expenditures made, and expenses incurred respectively by Crawford and by Coenen.
The Theus, Grisham, Davis and Leigh invoice is inadmissible hearsay, however, to prove that Mrs. Dedman agreed to attorney Curry's charges of $75 per hour. *1236 Crawford testified that he sat in on the conferences and depositions with Curry which resulted in the five hours being charged to Mrs. Dedman and that Crawford did not also charge for this same five hours. Crawford's testimony about the number of hours worked by Curry in Crawford's presence was admissible and corroborated the invoice as to hours worked. Crawford, however, did not testify that Mrs. Dedman agreed to Curry's $75 per hour charge. Under these circumstances, the judgment will be amended to reduce the amount awarded to the law firm plaintiff from $75 per hour to $50 per hour for the five hours worked by Curry.
At appellants' cost, judgment in attorney Coenen's case is affirmed, and as amended from $2,583 to $2,333, the judgment in the consolidated case is affirmed.
NOTES
[1] Coenen's services began August 14, 1978, and ended November 30, 1978. Typical extracts from his three-page invoice read as follows:

"11-7-78 Conference with Guerriero, conference with docket
 clerk re. continuing rule (2), letter to docket clerk,
 letter to Guerriero, conference with Guerriero .7"
 * * *
 "EXPENSES:
"8-23-78 Advance to Clerk's Office $100.00
 Milage (trips to Monroe)
 250 miles at 16¢ per mile $ 40.00
 Long distance telephone calls
 8-14-78 (2)
 8-17-78
 8-19-78
 8-21-78 (3)
 8-22-78 (8)
 8-23-78 (5)
 8-26-78
 8-29-78 (2)
 8-30-78 (2)
 8-31-78
 9-5-78
 9-8-78
 9-15-78 (2)
 9-17-78
 9-19-78 (2)
 9-20-78 (4)
 10-12-78 (2)
 10-27-78
 10-30-78
 10-31-78/11-30-78 (5)
 "Total46 calls $127.50 $3,017.00
"8-29-78 Retainer paid $1,000.00
 $2,017.00
"3-2-79 Paid by check of Theus,
 Grisham, Davis & Leigh 1500.00
 517.00"
Crawford's services began January 30, 1979, and ended June 25, 1979.
Typical extracts from Theus, Grisham, Davis & Leigh's seven-page invoice read
as follows:
 "June 15 To conference with Lynda Dedman; ¼
 "June 25 To conference with Joe D. Guerriero; ¼
 "1979 EXPENSES
 "February 27 To check to Bill C. Downey, Clerk, for filing fee $50.00
 "May 31 To check to Virginia Durham, court rptr. 139.60"

[2] Ward v. State Farm Mutual Automobile Ins. Co., 182 So.2d 130 (La.App. 4th Cir. 1966).
[3] Ascension Builders, Inc. v. Jumonville, 262 La. 519, 263 So.2d 875 (La.1972).