404 So.2d 1331 (1981)
NEWSPAPER PRODUCTION COMPANY, Plaintiff-Appellant,
v.
Douglas PERRY, Defendant-Appellee.
No. 14657.
Court of Appeal of Louisiana, Second Circuit.
September 29, 1981.
Love, Rigby, Dehan, Love & McDaniel by William G. Nader, Shreveport, for plaintiff-appellant.
D. G. Tyler, Shreveport, for defendant-appellee.
Before MARVIN, JASPER E. JONES and FRED W. JONES, Jr., JJ.
FRED W. JONES, Jr., Judge.
From a judgment rejecting its demands against a former newspaper carrier for failure to pay for newspapers allegedly sold to him for resale, plaintiff[*] appeals. We affirm.
Plaintiff's suit was premised on the contention that between December 1, 1978 and March 1, 1979 its contractual relation with defendant was that of vendor-vendee of newspapers for resale. However, the trial judge concluded that plaintiff had failed to prove "what kind of contract there may have been between the plaintiff and the defendant."
The record reveals that in the latter part of 1978 defendant learned from his brother, a newspaper carrier for plaintiff, that a newspaper route in north Shreveport would soon become available because of plaintiff's intention to dismiss its current carrier. The latter's drinking problem had led to a pronounced decline in the sale of newspapers *1332 along this particular route. At his brother's prompting defendant met with plaintiff's route supervisor (whose name never appeared in the record) to discuss the possibility of defendant assuming responsibility for the newspaper route.
According to defendant, the supervisor conceded that plaintiff's newspaper circulation along this route was in a deplorable state, as evidenced by the fact that the supervisor possessed neither an accurate list of subscribers nor their home addresses. Defendant testified that, as an inducement for his assumption of responsibility for "straightening out" the circulation of newspapers along this route, the supervisor agreed that defendant would receive a salary of $1,000 per month payable out of his receipts from newspaper sales. Since he never collected that amount during any one of the three months that he worked for plaintiff, defendant denied owing anything.
Plaintiff did not refute defendant's testimony concerning his contractual relationship with plaintiff. It did not call as a witness the route supervisor who contracted with defendant. In fact, none of plaintiff's employees who testified definitely established the identity of that supervisor. Elmer Lockwood, supervisor for another route, stated that "Ronnie Smith handled all of it." The witness then added that "Lyles", a district manager at the time, might have made representations to defendant. Judy Skinner, credit manager in plaintiff's circulation department, thought that "Lyle Roach" hired defendant, but explained that this party was no longer in plaintiff's employ.
In summary, defendant claimed that during the period in question he was an employee of plaintiff rather than an independent contractor who purchased newspapers for resale. Plaintiff presented no evidence to rebut this contention. Consequently, we agree with the trial judge that plaintiff failed to prove by a preponderance of the evidence that defendant purchased newspapers from it.
However, even if plaintiff did establish the sale of newspapers to defendant, the trial judge correctly ruled that plaintiff did not prove by competent evidence the balance due on this account.
According to the evidence presented at the trial, each of plaintiff's route supervisors prepared daily draw sheets for his newspaper carriers, showing the number of newspapers for which the carrier was charged on that particular day. The information from the daily draw sheets was then posted on a daily basis to ledger sheets by employees in plaintiff's circulation department. At the end of the month the information from the ledger sheets was transposed to a ledger card for the individual carrier by employees in plaintiff's bookkeeping department.
Plaintiff sought to prove the balance owed by defendant by offering in evidence defendant's ledger card. Judy Skinner, custodian of the ledger card, identified it as accurately reflecting the status of defendant's unpaid account. This witness made some of the entries pertaining to defendant on the ledger sheets, but did not post that information to the ledger card tendered in evidence nor did she supervise that posting. The party who performed this task for plaintiff was neither called as a witness nor identified.
Louisiana has long recognized the business records or regular entries in the course of business exception to the hearsay rule in both civil and criminal cases. State v. Monroe, 345 So.2d 1185 (La.1977); State v. Hodgeson, 305 So.2d 421 (La.1974); Theus, Grisham, Davis & Leigh v. Dedman, 401 So.2d 1231 (La.App.2d Cir. 1981); Herlitz Construction Co. v. Clegg Concrete, Inc., 378 So.2d 1002 (La.App. 1st Cir. 1979).
This exception to the hearsay rule provides, in general, that a permanent record made in the ordinary course of business, by a person unavailable for testimony, from personal knowledge of the facts recorded or from information furnished by one having a business duty to observe and report the facts, is admissible as proof of the facts recorded, in the absence of a strong motive to misrepresent, if the record is the first collected and recorded memorial. McCormick, On Evidence, § 307, p. 721.
*1333 Louisiana jurisprudence has elaborated upon this general principle by requiring the laying of the following foundation as a prerequisite to admissibility of business records:
(1) A showing that persons concerned with recording the information are unavailable for testimony, or production of such persons would be a needless burden.
(2) The first collected record available to or usable by the court is introduced.
(3) The records are identified at the trial by one familiar with the bookkeeping procedure.
(4) The evidence seems reliable after considering such factors as: contemporaneousness of the entry with the occurrence or fact recorded; first-hand knowledge of the entrant; existence of a business or professional duty to record or report the facts in the regular course of business; completeness and honest appearance of the books; and absence of fraud in making the entries or in destroying the supporting memoranda.
See Comment, "Business Records in Louisiana as an Exception to the Hearsay Rule," 21 La.L.Rev. 449, 486 (1961).
As noted, the particular books or records offered in evidence under this exception to the hearsay rule should be the first regular and collected records. It is presumed, obviously, that greater reliability is assured by proximity in time between occurrence of the transaction and the recording of the event. However, in two Louisiana cases summaries of daily records of large construction projects were admitted because it was either physically impossible for the court to examine all supporting memoranda or the supporting memoranda were destroyed in the regular course of business and there was no hint of fraud. Shea v. Sewerage & Water Bd. of N.O., 124 La. 299, 50 So. 166 (1909); Crosby v. Little River Sand & Gravel Development, 212 La. 1, 31 So.2d 226 (1947).
Ledger sheets made up from delivery tickets were deemed admissible in Talley v. Duplantis, 213 So.2d 82 (La.App. 1st Cir. 1968), after it was established that the entries were made in the ordinary course of business, there was no indication of fraud or ill practice, and the preparer of the documents testified as to their accuracy and authenticity.
In State v. Hodgeson, supra, the Louisiana Supreme Court ruled that computer print-out sheets showing charges for telephone calls were admissible as entries in the regular course of business once it was shown that (1) the electronic computing equipment was recognized as standard equipment, (2) the entries were made in the regular course of business at or reasonably near the time of the happening of the event recorded, and (3) the foundation testimony satisfied the court that the sources of information, method and time of preparation were such as to indicate its trustworthiness and to justify its admission.
This court held in Theus, Grisham, Davis & Leigh v. Dedman, supra, that "summaries of voluminous records are admissible where the preparer is available for cross examination and the original materials are available for examination by the opposing party."
In this case it is obvious that the ledger card offered by plaintiff to prove defendant's indebtedness was not the "first collected and recorded memorial" evidencing the status of the account. The first written documents were the daily draw sheets. However, under the rationale of the cited cases, upon a laying of the proper foundation the daily ledger sheets would have also been admissible as regular entries in the course of plaintiff's business. Not only did the ledger card fail to fall into this category, but plaintiff did not make available to the defendant at trial for examination the daily draw sheets or the daily ledger sheets. Furthermore, the witness, upon the basis of whose testimony plaintiff sought to introduce the ledger card, was not the party who posted the entries to the card nor did she supervise the posting of that data. Therefore, plaintiff did not establish the reliability of the ledger card as evidence of the trustworthiness of the information contained thereupon. Consequently, we agree with the trial judge that the ledger card was inadmissible hearsay.
*1334 For these reasons, we affirm the judgment of the district court, at appellant's cost.
NOTES
[*] A joint venture between two Shreveport newspapers.