567 So.2d 122 (1990)
COLE OIL & TIRE CO., INC., Plaintiff-Appellee,
v.
Tommy L. DAVIS and Glenda Miller Davis, d/b/a D & D Construction Co., Defendants-Appellants.
No. 21678-CA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 1990.
*124 Bobby L. Culpepper, Jonesboro, for defendants-appellants.
Chris L. Bowman, Jonesboro, for plaintiff-appellee.
Before MARVIN, FRED W. JONES and SEXTON, JJ.
MARVIN, Judge.
From a $3,021 judgment in an action on an open account plus attorney's fees, Davis appeals, contending that the judgment was founded on inadmissible hearsay records and testimony and that the correctness of the account was not proved.
For reasons assigned and applying the Code of Evidence, we reverse.

FACTS
In October 1986, plaintiff Cole Oil purchased the assets, including accounts receivable, of Boss Oil. One of the accounts was Davis's account which showed a balance due of $8,021.85.
Cole thereafter sold merchandise and fuel to Davis through 1988, at first on credit and later, at Davis's suggestion, for cash. Davis paid Cole for what he purchased from Cole and, according to Cole, paid a total of $5,000 on the Boss Oil balance.
When Cole's efforts to collect the $3,021.85 did not succeed, Cole demanded that amount in writing from Davis. Cole's letter demand was returned "unclaimed."
On December 29, 1988, Cole sued Davis and his wife on open account, alleging that Cole sold to them goods, merchandise and services "on the dates and for the prices" shown on an allegedly "attached" itemized statement of account, subject only to "payments" shown on the itemized statement. The itemized statement, however, was not attached to Cole's petition. Cole Oil's bookkeeper, Kim Jones, executed an affidavit generally swearing that $3,021.85 was past due on the account. This affidavit was the only attachment to the petition.
The defendants answered, specifically denying only the correctness of the amount demanded. Defendants did not deny that Boss Oil had delivered merchandise and services to them and did not plead an affirmative defense. Davis did not allege or attempt to show at trial that he made specific payments to Cole which were not properly credited.
Cole, plaintiff's president, the only witness to testify at the September 14, 1989, trial, testified about the 1986 purchase of Boss Oil, his continued business dealings and discussions with Davis thereafter about payment of the Boss Oil balance and about Davis's payments "toward" the Boss account to Cole.
Cole sought to introduce its "Exhibit P-1 in globo," to which Davis promptly objected. Exhibit P-1 is Cole's "monthly" statement, an adding machine tape, and 14 Boss Oil sales invoices to defendant, allegedly for purchases defendant made from Boss Oil between July 3 and September 10, 1986. Overruling Davis' prompt and repeated objections of hearsay and Cole's incompetence and lack of knowledge about the Boss Oil records, the trial court admitted P-1 and allowed the testimony from Cole.
The court rejected Cole's demands against Mrs. Davis because there was no proof of her being involved in her husband's business or personally responsible *125 to Boss Oil or to Cole. Judgment was rendered only against Mr. Davis, who appeals devolutively.

EXHIBIT P-1 and OTHER EVIDENCE
As stated, Exhibit P-1 is Cole Oil's printed "MONTHLY STATEMENT" showing a balance due of $3,021.85, to which is stapled an adding machine tape that totals $3,182.31 and 14 Boss Oil printed invoices. Six of the invoices show that "Jerry" signed as "Received Payment." One shows that "Bobby Stuart" signed as "Received Payment." Six of the invoices are unsigned. With the Cole Oil "MONTHLY STATEMENT" and the adding machine tape, we reproduce the remaining invoice which is the only one that bears, beneath the printed name "JERRY," a signature, somewhat illegible, under "Goods Received":
*126 
*127 As Davis argues, the invoices have facial discrepancies unexplained by Cole. Cole, the only witness, did not identify or relate to Davis any name that was printed or signed on any Boss Oil invoice. The total shown, and the six amounts listed, on the adding machine tape do not correspond to the amount Cole says is owed on the Boss Oil account by Davis.
Before Exhibit P-1 was offered into evidence, Cole identified the Cole Oil monthly statement and explained its content without objection. Contrary to the monthly statement showing "PAYMENT 5000.00," Cole testified that Davis had made several payments that totaled $5,000.
Cole then attempted to identify, authenticate and verify the 14 Boss Oil sales invoices. Davis promptly objected on the grounds that Cole lacked personal knowledge to identify the invoices, to verify "the amounts were actually delivered and received" by Davis, and to testify about the "prior owner['s]" business records.
Attempting to lay the proper foundation, Cole then explained that when he acquired the Cole Oil accounts receivable the sale documents showed that Davis then owed Boss Oil $8,021.85. The Boss Oil to Cole sale documents were not introduced into evidence.
Apparently assuming that the Boss Oil invoices were "records" of Cole Oil, the trial court overruled Davis's initial objections and allowed Cole's testimony. Cole testified, over objection, that the Boss Oil invoices reflected the amount Davis owed in 1986 and offered P-1, including the invoices, as evidence of the account. Davis's objections on the same grounds were again overruled and Exhibit P-1 was admitted.
On cross-examination, Cole stated he had not previously worked for and had no connection with Boss Oil, which was his competitor before he purchased the business and accounts receivables. He had no personal knowledge of and was unfamiliar with either Boss Oil's business records and sales invoices or Davis's alleged purchases from, and payments to, Boss Oil. Cole could not identify or testify regarding the individual's signature indicating "payment received" on the invoices. His only "personal knowledge" concerning Davis's account with Boss Oil was gained from the invoices and sale documents and verbal representations from Boss Oil.
Cole stated Cole Oil's payment records accurately reflected the total of amounts Davis paid on the Boss Oil account. Cole said Davis never questioned or disputed the Boss Oil balance during their discussions about the balance when Davis continued to do business with Cole Oil.
The Boss Oil-Cole "sale documents" and Cole Oil's "payment records" were not offered into evidence in the trial court.

HEARSAY AND THE BUSINESS RECORDS EXCEPTION
Before enactment of the Code of Evidence, hearsay was defined as an "out-of-court, unsworn, oral or written statement by a third party, which was offered for the truth of its content." See, e.g., State v. Gremillion, 542 So.2d 1074, 1077 (La.1989); and State v. Martin, 356 So.2d 1370 (La. 1978). Then, as now, hearsay was deemed unreliable and inadmissible. See, e.g., Williams v. Exxon Corp., 541 So.2d 910 (La.App. 1st Cir.1989), writ denied; LaSalle Pump & Supply Co., Inc. v. Louisiana Midland RR Co., Inc., 433 So.2d 745 (La.App. 3d Cir.1982), writ denied.
The Code of Evidence [Act 515 of 1988, eff. January 1, 1989], defines hearsay as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." C.E. Art. 801 and Section C. Unless specifically excepted or otherwise provided by the Code of Evidence or other legislation, hearsay is inadmissible. C.E. Art. 802.
Various exceptions to the hearsay rule are recognized in the Code of Evidence. See, e.g., C.E. Arts. 803 and 804. Article 803 hearsay exceptions are generally based upon the policy that when the qualifying circumstances are met, there is ordinarily a sufficient basis for crediting the trustworthiness and reliability of the out-of-court statement to justify making an *128 exception to the hearsay rule even though the declarant is available, but not called to testify, at trial. If the requirements for witness competency, authentication and exception are met, the hearsay "exclusionary rule" does not bar admission of some "business records."
Relevant here is C.E. Art. 803(6), the "business records" exception, which reads in pertinent part:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness: * * *
(6) Records of a regularly conducted business activity. In a civil case, a memorandum, report, record, or other data compilation, in any form, of acts, events, conditions, ... made at or near the time by, or from information transmitted by, a person with knowledge, if made and kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make and to keep the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. This exception is inapplicable unless the recorded information was furnished to the business either by a person who was routinely acting for the business in reporting the information or in circumstances under which the statement would not be excluded by the hearsay rule.... C.E. Art. 803(6) (1989). (Emphasis added.)
The "business records" exception to the hearsay rule in Louisiana is not new. Under prior statutes, the business records admissibility requirements in both civil and criminal cases were more restrictive, however. Often perceiving the business records exception as too strict and inappropriate for modern business practices, some trial courts often ignored the statutory provision and applied common law business records rules. See and compare former CC Arts. 2248 and 2249 with C.E. Art. 803(6); State v. Monroe, 345 So.2d 1185 (La.1977); State v. Hodgeson, 305 So.2d 421 (La.1974); Newspaper Production Co. v. Perry, 404 So.2d 1331, 1333 (La.App. 2d Cir.1981); Theus, Grisham, Davis & Leigh v. Dedman, 401 So.2d 1231 (La.App. 2d Cir.1981); and Herlitz Const. Co. v. Clegg Concrete, Inc., 378 So.2d 1002, 1005 (La.App. 1st Cir. 1979). See also Comment, Business Records in Louisiana as an Exception to the Hearsay Rule, 21 La.L.Rev. 449 (1961).
The C.E. exception is substantially derived from its federal counterpart, with some minor differences. Unlike the federal rule, the Louisiana rule applies only to civil cases. Additionally, our rule, incorporating a second sentence not found in the federal rules, expressly requires, as a prerequisite to admissibility, that the initial entry information, as well as all subsequent transmitting and recording of it, to have been performed in the course of a regularly conducted business activity by persons owing a duty to that business. Louisiana further requires that the records be "made and kept" not only in the course of a regularly conducted business activity but also as a regular practice of that business activity. See generally and compare the Introductory Note preceding the Louisiana Code of Evidence, and Arts. 801 and 803(6) and related Comments with Fed. R.Evid., Rules 801 and 803(6), 28 U.S.C.
Like its federal counterpart, our code provides that business records "in any form" escape the hearsay ban if (and only if) the requirements of the law are met. Authenticity and firsthand knowledge of the record or records must be shown before the record is admissible. See C.E. Arts. 602 and 901, et seq.
A verbal statement by an absent declarant is admissible under Art. 803 only when the circumstances sufficiently indicate that the out-of-court declarant had firsthand, personal knowledge of that which he spoke.
To exclude business records from the hearsay rule and render them admissible, Article 803(6) requires the court to determine from testimony of either the "records custodian or other qualified witness" that:

*129 1. The record of an event must have been made at or near the time of the event;
2. The record of an event must have been made either by, or from information transmitted by, a person with knowledge;
3. It must be made and kept in the course of a regularly conducted business activity;
4. It was the regular practice of that business activity to make and keep such records;
5. The recorded information must have been furnished to the business either (a) by a person who was routinely acting for the business in reporting the information; or (b) in circumstances under which the statement would not be excluded by the hearsay rule; and
6. Neither sources of information nor the method or circumstances of preparation must indicate a lack of trustworthiness.
Each of these requirements pose threshold questions for the trial judge. See also C.E. Art. 104(A).
The witness laying the foundation for admissibility of business records need not have been the preparer of the records. The person who keeps the books and records and makes the entries need not testify if a person who is in a position to attest to the authenticity of the records is present to testify. U.S. v. Fendley, 522 F.2d 181, 185 (5th Cir.1975). Nothing in the Code of Evidence specifically requires either that the foundation witness be able to personally attest to the accuracy of the information contained in the documents, or that he personally prepared the documents. Indeed, Article 803 specifically eliminates these requirements. See Fendley, supra. Compare under former law Vining v. State Farm Life Ins. Co., 409 So.2d 1306 (La. App. 2d Cir.1982), writ denied.
A party offering business records evidence is no longer generally required to prove the declarant's unavailability or that production of such persons would be a "needless burden." Moreover, the business records sought to be introduced at trial no longer must be the "first collected records available." The former requirements no longer constrain the required "records custodian or other qualified witness" who testifies to the foundation requirements. See and compare C.E. Art. 803(6) and Vining, Herlitz, cited supra.
The party who seeks to introduce written evidence must in some way, nonetheless, authenticate it by a qualified witness. Under Art. 803(6), it is essential that a custodian or other qualified witness testimonially explain the record-keeping procedures of the business and thus lay the foundation for the admissibility of the records. See, e.g., Rosenberg v. Collins, 624 F.2d 659, 665 (5th Cir.1980). That witness must, however, be familiar with and able to testify from personal knowledge about the bookkeeping and accounting procedures of the entity whose business records are sought to be introduced.
If the foundation witness cannot vouch that the requirements of the Code of Evidence have been met, the evidence or proffered entry must be excluded. See and compare Calhoun v. Baylor, 646 F.2d 1158, 1162 (6th Cir.1981) (no evidence of reliability); Coughlin v. Capitol Cement Co., 571 F.2d 290, 307 (5th Cir.1978) (authentication requirements not satisfied); Grey v. First National Bank of Dallas, 393 F.2d 371, 385-386 (5th Cir.1968), U.S. cert. denied (authentication requirements not satisfied); with Theriot v. Bay Drilling Corp., 783 F.2d 527 (5th Cir.1986) (invoices and delivery tickets properly admitted through necessary foundation); Liner v. J.B. Talley & Co., Inc., 618 F.2d 327 (5th Cir.1980) (no showing party's substantial rights were affected).
Nevertheless, the erroneous admission of documentary exhibits does not warrant a reversal unless it is shown that substantial rights of the objecting party were prejudiced or affected. C.E. Art. 103(A). The burden of demonstrating prejudice rests upon the party asserting error. See, e.g., C.E. Art. 103(A)(1) and Coughlin, supra, at 307.

*130 DISCUSSION
On this record we must conclude that the trial court was clearly wrong in admitting P-1. Boss Oil's invoices, Cole's testimony regarding them, and portions of the Cole Oil statement clearly were hearsay or were founded on hearsay. Cole simply was not the qualified witness that is necessary to establish the C.E. 803(6) business records exclusion in these respects:

Boss Oil invoices.
The 14 Boss Oil invoices were obviously prepared by one or more third parties in connection with and for use by Boss Oil. Third party invoices, prepared by an out-of-court declarant, constitute hearsay. Cole's testimony, which was based entirely on third party oral and written statements, is "double hearsay."
"Double hearsay" does not preclude admissibility if the statutory requirements are met. See, e.g., C.E. Arts. 801, 803(6) and 805 and related Comments. The statutory requirements are not met in this record.
Cole had no firsthand or personal knowledge about Boss Oil, its business records and accounting procedures or the "facts" contained in its invoices. He was never employed by or otherwise affiliated with Boss Oil when the invoices were prepared. He played no role in their creation or compilation. He knew nothing about the source or content, the method or circumstances of preparation or accuracy, trustworthiness or authenticity of the invoices.
Cole's only "knowledge" about the amount Davis allegedly owed came, he said, from sale documents, the invoices, and hearsay representations made to him by someone from Boss Oil. Cole testified that Boss Oil represented to him, in writing and verbally, at the time of the 1986 sale that Davis owed Boss Oil $8,021.85 on the accounts receivable Cole purchased. Cole's purchase of Boss Oil's assets does not make Cole "qualified" to verify or authenticate Boss Oil's record-keeping practices or the invoices in question. Though Cole Oil became the "owner" of Boss Oil's accounts receivable in 1986, and although Davis may have owed Boss Oil $8,021.85 at that time, Cole simply has not shown he had the necessary personal knowledge of and connexity with the Boss Oil transactions and business records to qualify him to provide the statutory foundation for admissibility of the records. C.E. Arts. 601, 602, and 901, et seq.
Cole did not know who prepared the documents. He could not identify the persons whose signatures appeared on the invoices or explain the facial discrepancies mentioned. Cole did not have personal knowledge of Boss Oil's record keeping practices or which invoices had or had not been paid by Davis and is in no position to attest to the reliability or trustworthiness of the invoices. See, e.g., Calhoun v. Baylor, supra. Cole was not, then, a "qualified witness." C.E. Arts. 803(6) and 901.
Moreover, other "business records" exception requirements were not met. The record does not show that the invoices were prepared "at or near the time" of the alleged purchases, or by or from a person having knowledge of the information being transmitted, or that the records were made and kept in the course of a regularly conducted business activity, or whether it was Boss's regular practice to make and to keep such records. Art. 803(6).
Cases under the former law have consistently held that third party invoices are not admissible as business records to establish damages unless their reliability is supported by the testimony of the third party. See and compare, e.g., Great American Surplus Lines Ins. Co. v. Bass, 486 So.2d 789 (La.App. 1st Cir.1986), writ denied; Herlitz I, supra, at 1006; and Sturgis v. Imperial Hotel, 144 So. 268 (La.App. 2d Cir.1932).
On this record, we must also find that substantial rights of Davis were prejudiced or affected. Davis's answer specifically denies the accuracy of the account sued on. No itemized statement of Davis' account reflecting credits and debits was attached to Cole's petition or introduced into evidence. Although the evidence of payments by Davis was properly admitted, *131 no knowledgeable person testified and was subject to cross-examination about the accuracy of the account. The hearsay rule addresses the danger of prejudice inherent in such circumstances. See, e.g., Williams and LaSalle, both supra.
The 14 Boss Oil sales invoices constituted inadmissible hearsay. C.E. Art. 803(6). Cole's testimony about the 14 invoices is likewise inadmissible hearsay.

Cole Oil's "MONTHLY STATEMENT".
Cole's testimony about Cole Oil's monthly statement, which was not specifically objected to, is a "summary statement" under the code. Cole testified that his bookkeeper, Jones, was responsible for Cole Oil's books and business computer and was familiar with Davis's account.
Cole generally testified about Cole Oil's accounting procedures. Cole stated he received Davis' payments, gave them to Jones, who entered these payments on the computer, generated payment receipts and that he was familiar with Davis's account. Cole implied that the original payment records, prepared by Jones and supporting a "computer trail" which was not introduced at trial, were made by Jones at or near the time of payment from information Cole supplied to Jones.
That portion of the monthly statement which shows the alleged Boss Oil balance constitutes "hearsay within hearsay" based on another's written and oral declarations even though entered on Cole Oil's business records. See Art. 805 and related Comment. "Hearsay within hearsay" is admissible only if each part of the combined statement conforms with the business records exception. C.E. Art. 805; see also, e.g., State v. Stokes, 433 So.2d 96 (La.1983); and Monroe, supra. Because Cole Oil failed to meet the statutory requirements for admitting the Boss Oil invoices, the portion of Cole Oil's monthly statement, which indicates Davis's September 30, 1986, "Balance Forward," constitutes hearsay.
Neither an itemized statement reflecting total debits and credits nor the actual payment receipts were introduced into evidence. Cole Oil's "monthly statement" reflects only the date of September 30, 1986. Cole testified, however, that Davis made several cash payments from 1986 through the latter part of 1988. The statement shows only the total amount of the payments. Thus, Cole Oil offers only a summary statement, which does not meet the statutory requirements.
There is no testimony indicating this summary statement was "made and kept" in the course of Cole Oil's regularly conducted business or that the summary form was a routine record-keeping practice of Cole Oil. Davis's objections were to Cole's competency to testify regarding and the admissibility of the third party business record and its content. Cole testified, without objection, about Cole Oil's monthly statement and its content. See Art. 103(A)(1). Even should we assume the monthly statement was generally admissible in these circumstances as a Cole business record, it was not admissible to prove the beginning balance owed by Davis on the Boss Oil account because Davis objected to any hearsay evidence to prove the balance owed on the account at any given time.

SUFFICIENCY OF EVIDENCE
Issues of admissibility, based upon foundation, verification and authenticity and bearing on the trustworthiness and reliability of the documents, differ from the sufficiency of proof, which goes to the weight and reliability of the evidence offered to meet the burden of proof. See, e.g., Professional Credit Services v. Fichtel, 544 So.2d 1322 (La.App. 4th Cir.1989). Business records evidence, even where admissible, may still be found insufficient to meet the burden of proof, or may be considered by the fact finder to be otherwise weak or unpersuasive evidence. See C.E. Art. 803(6) and introductory and provision comments.
In an action on open account, the plaintiff bears the burden of proving his case by a preponderance of the evidence. Texas Industries, Inc. v. Roach, 426 So.2d 315 (La.App. 2d Cir.1983). The amount of an account is a question of fact, *132 the trial judge's determination of which may not be disturbed absent manifest error. Rosell v. Esco, 549 So.2d 840 (La. 1989); Texas Industries, supra.
In proving an open account, a plaintiff must first prove the account by showing that the record of the account was kept in the course of business and by introducing supporting testimony regarding its accuracy. A prima facie case is established when the evidence proves the essential allegations of the petition to the same extent required as if those allegations had been specifically denied. See, e.g., Jim McCary, Inc. v. Price, 391 So.2d 921 (La.App. 2d Cir.1980). Once a prima facie case has been established, the burden shifts to the defendant to prove the inaccuracy of the account or to prove he is entitled to certain credits. General Electric Co. v. Louisiana Electric Supply, 460 So.2d 34 (La. App. 1st Cir.1984); Cardinal Wholesale Supply v. Rainbow Floor Covering, 432 So.2d 419 (La.App. 1st Cir.1983).
Having determined that the Boss Oil sale invoices, Cole's testimony regarding their contents, and the portion of Cole Oil's monthly statement reflecting Davis' Boss Oil balance were improperly admitted into evidence, we ignore that evidence as inadmissible, and conclude that Cole Oil did not meet its burden of proof.
The evidence shows only that Davis paid to Cole Oil several payments over a two-year period that totaled $5,000. There is simply no competent evidence to prove a balance of the Boss Oil account either before or after credit is given for payments to Cole by Davis. Cole's assertions that Davis did not dispute the Boss Oil account balance which was $3,021.85 is not sufficient to establish a prima facie case. Vining v. State Farm, supra.

DECREE
At plaintiff's cost, we reverse and render judgment in Davis's favor rejecting Cole's demands.
REVERSED AND RENDERED.