474 So.2d 1366 (1985)
LOUISIANA BUSINESS COLLEGE, Plaintiff-Appellee,
v.
Abbie Gayle CRUMP, Defendant-Appellant.
No. 17146-CA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1985.
*1368 North Louisiana Assistance Corporation by Daisy M. Jefferson, Monroe, for defendant-appellant.
Lee E. Ineichen, Monroe, for plaintiff-appellee.
Before HALL, MARVIN and SEXTON, JJ.
SEXTON, Judge.
Abbie Gayle Crump appeals an adverse judgment in favor of Louisiana Business College of Monroe, Inc. finding her to be liable for repayment of a $1,295 loan from the National Direct Student Loan (NDSL) program, and dismissing her demand in reconvention. We affirm.
On March 2, 1981, Abbie Gayle Crump signed an enrollment contract with Louisiana Business College for a nine month night course in accounting and office machines. The contract stated that the tuition for the course was $2,795. Also included in the contract price was $200 as estimated cost of books, and $50 as a non-refundable registration fee. The total price of the course was $3,045.
To finance her education, Crump applied for certain federal financial aid. She received $915 from federal grants, both Basic Education Opportunity Grants (BEOG) and Supplemental Education Opportunity Grants (SEOG), and $1,295 from the National Direct Student Loan (NDSL) Program. After application of the federal funds toward her account, a balance of approximately $700 remained. Louisiana Business College instituted suit for this amount and obtained judgment. Thereafter, the present suit was instituted seeking to recover the $1,295 from the NDSL loan.
Defendant answered the suit and reconvened claiming she was entitled to a partial refund of tuition because she did not attend the full first or third quarters of the course. Crump also filed exceptions of res judicata and improper division of the cause of action. The trial court overruled the exceptions and awarded judgment in favor of Louisiana Business College for $1,295, to be held in a trust account for the exclusive use and on behalf of the NDSL Program. Crump appeals that judgment specifying six trial court errors.

RES JUDICATA AND IMPROPER DIVISION OF CAUSE OF ACTION
Initially, appellant contends that the trial court erred in overruling her exceptions of res judicata and improper division of cause of action. These exceptions were based on the fact that Crump was previously sued for the unpaid amount of her tuition. Appellant contends that the previous suit and resulting judgment on open account bars the subsequent attempt to collect the NDSL loan.
Relitigation of the object of the judgment is barred when there is (1) identity of the thing demanded; (2) the same cause of action; and (3) the same parties appearing in the same quality. LSA-R.S. 13:4231; Safeco Insurance Company of America v. Palermo, 436 So.2d 536 (La. 1983). When a litigant interposes a plea of *1369 res judicata, the court must examine not only the pleadings but also the entire record in the first suit, to determine whether the availability of the particular form of relief sought in the second suit was actually ruled upon. Sewell v. Argonaut Southwest Insurance Company, 362 So.2d 758 (La.1978). The burden of proof is upon the pleader, the defendant, to establish the essential facts to sustain the plea of res judicata. Provenza v. Auto For Rent, Inc., 258 So.2d 208 (La.App. 2d Cir.1972).
In this instance, the trial court in overruling the exception of res judicata, alluded to the record of the previous proceedings. However, neither the record of the first suit nor the resulting judgment was introduced into evidence at trial. There is no provision in the law for this court to take judicial notice of the suit records from another court. It was incumbent upon defendant to introduce that document into evidence at the trial court juncture of these proceedings. See LSA-C.C.P. Art. 1393; Jenks v. Gulla, 383 So.2d 1052 (La.App. 1st Cir.1980); Mattox v. American Indemnity Co., 259 So.2d 79 (La.App. 4th Cir.1972). Counsel for appellant did attach to her brief a copy of the petition in the previous suit on open account. However, an attachment to an appellate brief does not constitute part of the record on appeal. Blouin v. Loyola University, 325 So.2d 848 (La.App. 4th Cir.1976); Ingram Corporation v. Cook, 280 So.2d 400 (La. App. 1st Cir.1973); National Bank of Commerce in New Orleans v. Justice, 212 So.2d 711 (La.App. 4th Cir.1968).
We determine that appellant has failed to sustain her burden of proof with respect to the exception of res judicata. The record is void of any proof that would indicate that this matter has already been adjudicated.
Appellant also claims that the business college divided its cause of action against Mrs. Crump. LSA-C.C.P. Art. 425 provides that:
Art. 425. Division of cause of action, effect
An obligee cannot divide an obligation due him for the purpose of bringing separate actions on different portions thereof. If he brings an action to enforce only a portion of the obligation, and does not amend his pleading to demand the enforcement of the full obligation, he shall lose his right to enforce the remaining portion.
The rule of C.C.P. Art. 425 is designed to minimize litigation and to prevent harassment of defendants by a multiplicity of suits based upon the same claim. Sutterfield v. Fireman's Fund American Insurance Co., 344 So.2d 1159 (La.App. 4th Cir. 1977). We note that this contention, like the res judicata contention, is difficult to evaluate without the record of the prior proceedings. However, appellant strenuously argues that the NDSL funds represented only a part of the total contract price for the course, as did the $700 previously sued for, and that by bringing two separate actions, the business college contravened the provisions of Art. 425 by splitting its cause of action.
Plaintiff's first suit against defendant was for the balance due on her open account with the school representing the unpaid balance owed to the school on her tuition. The instant litigation involves the recovery of certain federal funds advanced to the institution by the federal government as part of a comprehensive legislative scheme designed to "[stimulate] and [assist] in the establishment and maintenance of funds at institutions of higher education for the making of low interest loans to students in need thereof to pursue their courses of study in such institutions." 20 U.S.C. § 1087aa (1980). In accordance with the provisions of this legislation, the funds were eventually loaned to defendant from a fund established at the school by the federal government after her qualification for financial aid with the federal government. The school is authorized by federal regulation to collect these funds and place them back in the NDSL account for future federal loans to students. See 34 C.F.R. § 674.46 (1982). Although the note is made payable to the business college, it is subject to federal regulation and the lending institution is severely restricted in its use of these *1370 funds. It should be noted that the NDSL note affords a nine month grace period after a student's separation with the institution before interest accrues and before payment of the first installment on the loan is due. Default is defined as the failure of a borrower to (1) make an installment payment when due; or (2) comply with other terms of the promissory note. See 34 C.F.R. § 674.2 (1983). Appellant defaulted on her loan when she failed to begin repayment after nine months from her leaving the institution. Conversely, the suit on open account was due from a time considerably earlier than the maturation of the loan obligation upon appellant's default by nonpayment. Appellant's contention that the business school divided its cause of action is without merit as the suits were two separate causes, one for tuition due on open account and one for recovery of the proceeds of a loan.

LACK OF SIGNATURE ON SCHEDULE OF ADVANCES
Appellant claims that the trial court erred in holding that appellant's signature on the award authorization letter dispensed with the need for appellant's signature on the promissory note in the space provided for in the schedule of advances.
The promissory note contained in evidence and signed by appellant states that:
I, ABBIE CRUMP hereinafter called the Maker, promise to pay to Louisiana Business College of Monroe, Incorporated, hereinafter called the Institution, located at Monroe, Louisiana, the sum of such amounts as may from time to time be advanced to me and endorsed in the Schedule of Advances below and such amounts as from time to time are credited to my account at the School from the National Direct Student Loan Fund, acceptance and receipt of same to be shown by signature on the Louisiana Business College of Monroe, Inc. Award Authorization Form attached to this promissory note, together with all attorney's fees and other costs and charges necessary for the collection of any amount not paid when due.

 AMOUNT DATE SIGNATURE OF MAKER
1. $650.00 3-26-81 /s/ Abbie Gayle Crump
2. $645.00 7-13-81

It is obvious that the defendant is correct that she did not sign for the second disbursement of $645 advanced on July 13, 1981. However, she did sign an award authorization form stating the amount of the loan as $1,295. Under the terms of the promissory note signed by Crump, she promised to pay "such amounts as from time to time are credited to my account at the School from the National Direct Student Loan Fund, acceptance and receipt of same to be shown by signature on the Louisiana Business College of Monroe, Inc. Award Authorization Form...." Since the $1,295 figure was credited to her account and she signed the award authorization form, she was liable under the terms of the promissory note to repay the $1,295.

FAILURE OF CONSIDERATION
Appellant testified that she was distressed by the fact that teachers were changed regularly or, in some cases, none were available to teach certain courses. This dissatisfaction eventually led her to withdraw from her studies at Louisiana Business College because she was not receiving the quality education she expected to receive. She now argues that considering the poor quality of education she received at the business school, there was a failure of consideration for the promissory note signed to finance her education there.
Failure of consideration is an enumerated affirmative defense. One who pleads an affirmative defense has the burden of establishing it. See LSA-C.C.P. Art. 1005. In rejecting plaintiff's claims, the trial court noted that "the defendant chose not to pursue this thing. She was there. She had this course paid for. She could have gone, but I think she got discouraged because she wasn't making the progress that she had hoped to make maybe because the school was in a slipshod condition or something like that." This statement of the trial court recognizes defendant's expressed dissatisfaction with the educational program at the school. Nevertheless, the court held that the defendant did not sustain her burden of proof with respect to this claim. On the basis of the record before us, we discern no clear error in the rejection of defendant's claim of lack of consideration for the note.

*1371 ADMISSION OF ATTENDANCE RECORDS
At trial, plaintiff introduced roll sheets of certain teachers at the business college and an attendance record in order to establish defendant's attendance at the institution. Defendant objected to their admission claiming that the proper foundation for their admission had not been established.
The business records exception to the hearsay rule was thoroughly explained by this Court in Newspaper Production Company v. Perry, 404 So.2d 1331 (La.App. 2d Cir.1981), wherein it was stated:
Louisiana has long recognized the business records or regular entries in the course of business exception to the hearsay rule in both civil and criminal cases. State v. Monroe, 345 So.2d 1185 (La. 1977); State v. Hodgeson, 305 So.2d 421 (La.1974); Theus, Grisham, Davis & Leigh v. Dedman, 401 So.2d 1231 (La. App. 2d Cir.1981); Herlitz Construction Co. v. Clegg Concrete, Inc., 378 So.2d 1002 (La.App. 1st Cir.1979).
This exception to the hearsay rule provides, in general, that a permanent record made in the ordinary course of business, by a person unavailable for testimony, from personal knowledge of the facts recorded or from information furnished by one having a business duty to observe and report the facts, is admissible as proof of the facts recorded, in the absence of a strong motive to misrepresent, if the record is the first collected and recorded memorial. McCormick, On Evidence, § 307, p. 721.
Louisiana jurisprudence has elaborated upon this general principle by requiring the laying of the following foundation as a prerequisite to admissibility of business records:
(1) A showing that persons concerned with recording the information are unavailable for testimony, or production of such persons would be a needless burden.
(2) The first collected record available to or usable by the court is introduced.
(3) The records are identified at the trial by one familiar with the bookkeeping procedure.
(4) The evidence seems reliable after considering such factors as: contemporaneousness of the entry with the occurrence or fact recorded; first-hand knowledge of the entrant; existence of a business or professional duty to record or report the facts in the regular course of business; completeness and honest appearance of the books; and absence of fraud in making the entries or in destroying the supporting memoranda.
See Comment, "Business Records in Louisiana as an Exception to the Hearsay Rule," 21 La.L.Rev. 449, 486 (1961).
At trial, these records were identified by Norma Dean, director of NDSL Collections and Accounts Receivable for Louisiana Business College at the Shreveport office. The attendance record was apparently prepared by Mr. Wiggins, listed on the document as the "school representative." Mrs. Dean testified that she did not believe that Mr. Wiggins was still employed at the school and that she did not know who was presently in charge of compiling attendance records for the Monroe school. She stated that she was not familiar with the process because all she received in the Shreveport office was the actual attendance cards when the student left the school. However, she did state that the teachers kept a roll for each individual class, then from these individual rolls, the attendance card was posted.
Mrs. Dean also testified with respect to the teacher's roll sheet. She stated that one of the roll books belonged to C. Rushing, and one to Frank McCormick. She did not testify as to the unavailability of these teachers to testify nor did she state that the production of these teachers would be a needless burden. Likewise, Mrs. Dean offered no testimony establishing the unavailability of the recorder of the attendance records, Mr. Wiggins. In fact, she was not even aware of who was recently in charge of this function at the school.
*1372 Accordingly, she could offer no testimony establishing the unavailability of this witness. In short, a proper foundation for the admission of these records was not established. Absolutely no evidence was presented that the persons concerned with recording the information were unavailable or that their production would be a needless burden. The trial court therefore erred in failing to exclude these records from evidence.
Having concluded that the records were improperly admitted, we must now examine what effect their absence has on the primary claim.
The eligibility requirements for receipt of federal assistance are set forth in 20 U.S.C. § 1091 which provides:
§ 1091. Student eligibility
(a) Eligibility requirements
In order to receive any grant, loan, or work assistance under this subchapter and part C of subchapter I of chapter 34 of Title 42, a student must
(1) be enrolled or accepted for enrollment at an institution of higher education that is an eligible institution in accordance with the provisions of section 1094 of this title:
(2) except as otherwise specifically provided, be carrying or planning to carry at least one-half the normal full-time workload for the course of study the student is pursuing, as determined by the institution;
(3) if the student is presently enrolled at an institution, be maintaining satisfactory progress in the course of study the student is pursuing according to the standards and practices of the institution at which the student is in attendance;
(4) not owe a refund on grants previously received at such institution under this subchapter and part C of subchapter I of chapter 34 of Title 42, or be in default on any loan from a student loan fund at such institution provided for in part D of this subchapter, or a loan made, insured, or guaranteed by the Secretary under this subchapter and part C of subchapter I of chapter 34 of Title 42 for attendance at such institution; and
(5) file with the institution of higher education which the student intends to attend, or is attending (or in the case of a loan or loan guarantee with the lender), a statement of educational purpose (which need not be notarized) stating that the money attributable to such grant, loan, or loan guarantee will be used solely for expenses related to attendance or continued attendance at such institution.
See also 34 C.F.R. § 674.9 (1982).
Therefore, in order to be eligible for receipt of the federal funds, a student must be maintaining satisfactory progress in the course of study he or she is pursuing according to the standards and practices of that institution.
Abbie Crump testified that she attended from March 16, 1981 to April 18 or 19, 1981 and withdrew at this point. She stated that she resumed her education about July 18, 1981 and attended through September, 1981, finishing the second quarter of the three quarter program. Crump testified that she attended school approximately one week of the third quarter and then withdrew again. Arguably then, Crump was not maintaining satisfactory progress when she received the second disbursement of funds on July 13, 1981, and would not be entitled to receipt of the federal funds.
However, 34 C.F.R. § 674.9(d) provides with respect to the determination of satisfactory progress:
(d) Determination of satisfactory progress.

(1) If an institution determines at the beginning of a payment period that a student is not maintaining satisfactory progress, but reverses itself BEFORE the end of the payment period, the institution may make an NDSL advance to the student for the entire payment period.
(2) If an institution determines at the beginning of a payment period that a student is not maintaining satisfactory progress, but reverses itself AFTER the *1373 end of the payment period, the institution may NOT advance any funds to the student for that payment period OR make adjustments in subsequent financial aid payments to compensate for the loss of aid for that period.
Consequently, had the institution determined at the time for the second disbursement of the NDSL loan that Abbie Crump was not maintaining satisfactory progress in her course of study, but reversed itself once she resumed her academic progress by entering and completing the second quarter, the institution could still have legally advanced her the second disbursement.
Moreover, an affirmative defense is one which, if valid will have the effect of defeating plaintiff's claim on the merits. First National Bank v. Higgs, 406 So.2d 673 (La.App. 2d Cir.1981). We believe that Crump's claim that she did not attend long enough to owe the full amount did not constitute a failure to prove an element of plaintiff's case-in-chief, but rather demonstrated her failure to discharge her burden of proof on an affirmative defense. She simply did not prove that the institution had no authority to disburse the second loan advance because of her absence from school. This specification lacks merit.

RECONVENTIONAL DEMAND
Abbie Gayle Crump filed a reconventional demand against the business school alleging that since she did not attend for the entire course she was entitled to a refund of part of the total course price. She now complains that the trial court erred in rejecting her demand.
The enrollment contract between Crump and the business school provides in pertinent part that:
I understand that for any reason I am unable to enter Louisiana Business College all tuition paid prior to entrance (with the exception of a $50.00 non-refundable registration fee) will be refunded. I understand that WITHDRAWAL AFTER COMMENCEMENT OF CLASSES, the REFUND POLICY SHALL BE:
(1) During the first week of classes the college will retain 10 per cent of the stated course price. (2) During the next three weeks of classes the college may retain 20 per cent of stated course price. (3) During the first 25 per cent of the course the college will retain 45 per cent of the stated course price. (4) During the second 25 per cent of the course the college will retain 70 per cent of the stated course price. (5) During the third and fourth 25 per cent of the course the college will retain 100 per cent of the stated course price. Percentage of course completion is to be computed on the basis of clock hours. For programs longer than one year (12 calendar months) in length, 100 per cent of stated course price attributable to the period beyond the first year will be refundable when the student withdraws during the prior period. Any unused portion of the book fee will be REFUNDED.
To recapitulate, Crump testified that she began the program on March 16, 1981 and attended for approximately three and one-half weeks, withdrawing on April 18 or 19th. According to her testimony she attended and completed the second quarter, but only attended approximately one week of the third quarter before withdrawing. The contract states that the percentage of course completion is to be computed on the basis of clock hours. There is no evidence in the record which establishes defendant's attendance in clock hours except for the attendance records, and defendant has successfully argued against the admission of these records on appeal. As such, defendant has failed to establish her entitlement to a refund and her reconventional demand was properly rejected.

TRIAL COURT COLLOQUY
In her final specification of error appellant complains that the trial court committed prejudicial error by allowing plaintiff's counsel to confer with his witness during argument to the court. In effect, Abbie Gayle Crump complains that the witness was presenting further evidence *1374 during argument through trial counsel for plaintiff.
It is apparent that the trial court utilized this discussion to better understand the complicated documentary evidence introduced at trial which was central to a resolution of the issues presented. However, it is equally apparent that defendant was not prejudiced by this somewhat irregular colloquy as the business college introduced independent proof of the main demand which entitled it to the relief requested. The trial court's finding is supported by the record and therefore will not be disturbed by us on appeal.
Accordingly, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.