LeBLANC, Judge.
This is a suit by plaintiff, Pilié and Pilié, for attorney’s fees and damages for breach of contract against defendants, Mr. and Mrs. Timothy W. Metz. Plaintiff appeals from a judgment granting defendants’ exception of res judicata and dismissing its suit.
The factual background of this suit is as follows. On April 18, 1979, Timothy Metz was injured in a helicopter crash which occurred in Newark, New Jersey. Thereafter, he retained the law firm of Pilié and Pilié (Pilié), a partnership domiciled in New Orleans, to represent him with respect to the personal injuries he sustained in the crash.[1] On August 30, 1979, Mr. and Mrs. Metz entered into a contingency fee contract with Pilié providing for a contingent fee of one-third (Vs) of the first $500,000.00 recovered and forty percent (40%) of all sums recovered in excess of $500,000.00. Pilié later agreed to reduce its contingency fee to one-third (⅛) of all sums recovered. With the Metzs’ approval, Pilié associated a New York firm, Speiser & Krause, P.C., to file suit in New York Federal District Court and to act as trial counsel in this matter. According to Pilié, its agreement with Speiser & Krause (Speiser) provided that Speiser was to receive fifty percent (50%) of Pilié’s one-third contingency fee if it was necessary to try the Metz’ case on the issue of liability or thirty-five (35%) percent if the case was tried on the issue of damages alone. However, a dispute later arose between Pilié and Speiser as to how the contingency fee was to be split.
In any event, Mr. Metz subsequently executed an assignment to Whitney National Bank of his interest in his suit to the extent of his indebtedness to Whitney, i.e., $446,-323.12, plus $68.95 daily from the date of the agreement until paid. Speiser & Pilié were also parties to this agreement, which provided that sums due to assignor (Metz) as a result of his suit were to be paid to Speiser, which was to deduct the amount due to it as attorney fees, and then to pay all remaining sums to M. Amaud Pilié of Pilié and Pilié within twenty-four hours of receipt thereof. Pilié was authorized to deduct all sums due as attorney fees, after which he was directed to immediately pay all remaining money to Whitney.
The Metzs’ suit was eventually tried on the issue of damages, resulting in a judgment in their favor for $2,089,000.00. However, the trial court’s judgment was reversed on appeal and the matter remanded for a new trial. The parties subsequently agreed on a settlement in the amount of $2,350,000.00, making a new trial unnecessary. As part of the parties’ agreement, attorney fees were reduced to the amount of $650,000.00 (approximately twenty-eight (28%) percent of the total settlement). Although Speiser agreed to this reduction, Pilié allegedly did not.
Speiser subsequently filed a Rule to Show Cause why the proceeds of the settlement should not be paid in accordance with the agreement of Speiser, the defendants in that tort suit and Metz, including the provision that attorney fees be awarded in the amount of $650,000.00. In response, Pilié filed an opposition to the rule, as well as a cross-petition asserting a “first priority lien on the proceeds of this settlement under its Contingency Fee Contract” with the Metzs, as well as the Whitney assignment agreement. Pilié maintained Speiser was entitled to thirty-five (35%) percent of the designated attorney’s fees. At a hearing on Speiser’s rule, all parties, including Whitney, consented to the proposed distribution of the settlement proceeds, with the exception of Pilié. On August 2, 1985, the court entered an order distributing the settlement proceeds, which included an award to Pilié of $271,666.67 “as ... the undisputed portion of its share of the 28% contingency fee (216,666.67) plus return of disbursements ($55,000) ... ”. Speiser was awarded $216,666.67 “as .... the undisputed portion of its share of the 28% contingency fee”. The court ordered that the disputed portion of the contingency fee, i.e., $216,-666.66, be placed in a joint escrow account *592 subject to the mutual agreement of the parties or further order of the court. Filié subsequently reached a settlement with Speiser, pursuant to which Speiser received $64,166.67 of the amount held in the escrow account. In the district court’s August 2nd judgment, Filié was also awarded an additional amount of $100,000.00 as “its non-contingency fee for professional services”. Filié did not appeal any aspect of the district court’s judgment.
On December 6, 1985, Filié filed the present suit against the Metzs. In response, defendants filed exceptions of improper venue and res judicata. The exception of improper venue was mooted when this suit was transferred from Orleans Parish, where it was originally filed, to St. Tammany Parish, defendants’ domicile. However, the trial court granted defendants’ exception of res judicata and dismissed plaintiff's suit on this basis. Plaintiff has appealed this judgment.
The theory behind the civilian concept of res judicata is that matters actually litigated and finally adjudged in a prior suit are presumed correct and, therefore, should not be contradicted in a subsequent suit. Sewell v. Argonaut Southwest Ins. Co., 362 So.2d 758 (La.1978). Thus in Louisiana, relitigation of the object of a judgment is barred when there is: (1) identity of the thing demanded; (2) the same cause of action; and, (3) the same parties appearing in the same quality. La.R.S. 13:4231; Safeco Ins. Co. of America v. Palermo, 436 So.2d 536 (La.1983). The absence of any one of these elements is fatal to the exception. Higgins v. State, Dept. of H. & H. Resources, 451 So.2d 142 (La.App. 1st Cir.1984). As stated by the Supreme Court in Sewell, supra, at p. 760,
It is evident from a decree which expressly grants or rejects a thing demanded that the matter has been adjudged. A demand may also be impliedly rejected by the silence of a judgment which fails to grant the demand, provided that the matter has been actually litigated and finally adjudged so that it became an “object of the judgment.” La.Civ.Code art. 2286. Thus, when a litigant interposes a plea of res judicata, the court must examine not only the pleadings but also the entire record in the first suit, to determine whether the availability of the particular form of relief sought in the second suit was actually ruled upon.
Further, it is well-established that res judicata is stricti juris and a second suit is not barred when there is any doubt as to its application. Higgins, supra, at 144. Finally, the burden of proof is upon the defendant to establish the essential facts necessary to sustain an exception of res judicata. Louisiana Business College v. Crump, 474 So.2d 1366 (La.App. 2nd Cir.1985).
In the present case, plaintiff has asserted three claims against defendants. We will consider each of these separately.
COUNT I
In this claim, plaintiff seeks recovery of what it claims is the balance due to it under its one-third contingency fee contract with defendants, since the attorney fees awarded by the New York court were less than one-third of the settlement made. Specifically, plaintiff claims it is entitled to receive 65 percent (based on the alleged agreement with Speiser to split the fee 65/35) of one-third of $2,240,000.00[2] less the $650,000.00 in attorney’s fees already paid, i.e., $62,833.33.
The trial court sustained defendants’ exception of res judicata as to this claim. Upon careful examination of the record, however, we do not find that all of the requisites for sustaining a plea of res judi-cata are present. First, we note that the record contains very limited evidence of the pleadings, evidence introduced or arguments made in the previous litigation. For instance, a copy of Speiser’s petition to show cause why the settlement proceeds should not be paid pursuant to the agreement between Mr. Metz and the defendants *593 was not introduced into the record of the present proceedings. However, the record does contain the opposition and cross-petition filed by Pilié in response to Speiser’s petition. While Pilié acknowledges his one-third contingency fee contract with defendant and, in its cross-petition, asserts a “first priority lien” on the settlement proceeds on the basis of this contract, nowhere in these pleadings does Pilié demand one-third of the settlement proceeds (or his proportionate share thereof). Rather, Pilié seeks 65 percent of the $650,000.00 in attorney fees which the parties, excluding itself, had agreed upon. Pilié does assert the contingency fee contract, as well as the Whitney assignment, as a basis for claiming a lien on the settlement proceeds, but it does not appear from the evidence in the record that Pilié ever demanded specific performance of the one-third (Vs) contingency contract itself. We disagree with the trial court’s conclusion that Pilié pled its contract and the New York court “tacitly rejected any adherence to its [one-third (Vs) contingency] terms”. The evidence in the record is simply insufficient to establish whether the relief sought in the present case was ever presented or ruled upon in the prior suit.
It may be that such evidence could be produced. However, since it is not presently in the record, the trial court erred in granting defendants’ exception of res judi-cata as to this claim.
COUNT II
By this claim, plaintiff seeks damages for the breach of the terms of the Whitney assignment, which provided that, after Speiser deducted its attorneys fee, the proceeds of the suit were to be paid to Amoud Pilié who, after deducting attorney fees, would then turn over the remaining of the proceeds to Whitney Bank. Plaintiff maintains it was unable to collect its full legal fee because of defendants’ actions in circumventing the provisions of this assignment by requesting for the New York court to pay the settlement proceeds directly to them and their creditors, excluding plaintiff entirely from the process of distributing the proceeds.
We find that the demand made by plaintiff in this suit with respect to the assignment agreement is different from the demand it made in the New York proceedings. In the New York proceedings, plaintiff sought specific performance of the Whitney assignment agreement, while in the instant suit, plaintiff seeks damages for defendants’ alleged failure to comply with the terms of this agreement. Since these demands are completely different, the trial court erred in dismissing this claim on the basis of res judicata.
COUNT III
In this claim, plaintiff asserts it is entitled to an award of attorney fees to be set on a quantum meruit basis for legal services it performed on defendants’ behalf. According to plaintiff’s petition, these services were unrelated to the Metzs’ suit for personal injuries.
We find that the requisites of res judica-ta have clearly not been established with respect to this claim. There is no evidence that a fee for these particular legal services was ever pled, demanded or put at issue by plaintiff in any previous judicial proceedings, including those in New York. Although the New York court made an award to plaintiff for a “non-contingency fee for professional services”, there is no indication of the nature of these services or that they were the same legal services for which plaintiff now seeks recovery. Accordingly, the trial court erred in concluding this claim was barred by res judicata.
For the above reasons, the judgment of the trial court is reversed. We express no opinion on the merits of plaintiff’s respective claims. Appellee is to pay all costs of appeal.
REVERSED.

. The partnership of Pilié & Pilié was in liquidation at the time suit was filed.

. Plaintiff agreed to deduct $110,000.00 in costs from the actual settlement total of $2,350,000.00 before calculating the contingency fee.