DENNIS, Justice.
We are called upon to determine the res judicata or claim preclusion effect of a federal diversity court judgment upon an action brought in the court of a state other than the one in which the diversity court sat. A law firm sued its former client for additional legal fees pursuant to a contingent fee contract and for breach of contract damages after having been awarded a substantial percentage of the client’s personal injury recovery by a federal diversity court in another state. The trial court sustained the former client’s exception of res judicata and dismissed the law firm’s suit. Applying Louisiana res judicata law, the court of appeal held that the law firm’s claims were not precluded by the federal judgment. Pilié & Pilié v. Metz, 521 So.2d 590 (La.App. 1st Cir.1988).
We reverse. Federal rather than state law controls in determining the effect of a judgment rendered by a federal diversity court sitting in another state. While there is disagreement as to which is the correct federal rule, i.e., whether res judicata should be determined by the intramural federal law or by the law of the state in which the prior diversity court sat, it is clear that the second forum is not free to apply its own law. Rather, it must give full faith and credit to the federal judgment by following one of the federal rules. We need not decide in the present case which federal rule is preferable, however, because the competing rules applicable to the issues here are identical. Under either federal rule, the law firm’s claim to enforce a contingent fee contract and assignment agreement to recover attorneys’ fees and the firm’s claim to recover damages for breach of these contracts are barred; these claims are res judicata because they are rights to remedies arising out of the same transactions as the claims that the law firm previously asserted and caused to be adjudicated in the federal court. We reserve judgment on whether the law firm’s third claim, quantum meruit demanded for legal services in connection with freeze damage to the client’s dwelling, was related to the same transaction or connected transactions as its claim in the federal action, and we remand the case to the trial court for an evidentiary hearing and a ruling on this issue.
1. Background
After suffering serious injuries in a helicopter crash in New Jersey, Timothy Metz, a Louisiana resident, employed Pilié & Pilié, a New Orleans law firm, to assert damage claims against the owner and operator of the aircraft. In a single attorney-client contract, Metz employed Pilié to prosecute his personal injury claim for a contingent fee of one-third of the amount recovered, engaged Pilié to represent him and D & J Manufacturing, Inc. in “other legal matters” and agreed to pay Pilié additional fees for the “other legal matters” out of his personal injury recovery. With Metz’s approval, Pilié engaged Speiser & Krause, a New York law firm, to file a diversity action and act as trial counsel in the United States District Court for the Eastern District of New York. In a separate agreement, Pilié and Speiser agreed to share the contingent fee with 65% to go to Pilié and 35% to Speiser. The case was *1307 tried, but a judgment in Metz’s favor was reversed on appeal. Shortly before the ease was to be retried, Metz and the defendants agreed to settle the case for $2,350,-000.
To facilitate the settlement, Speiser and Metz agreed to reduce the contingent fee to 28% of the amount recovered, but Pilié insisted that the fee should be maintained at 38⅛%. Also, Pilié and Speiser disagreed over how to divide the fee between them. Speiser moved the court, on behalf of itself and Metz, to order Pilié and other parties to show cause why the proceeds of the settlement should not be distributed to Metz, his attorneys and his creditors in accordance with a proposed schedule. Pilié filed an answer denying the court’s jurisdiction and a cross-claim against Metz asking the court to reject the distribution proposed by Metz and Speiser and instead to order the proceeds allocated according to the terms of Pilié’s contingent fee contract with Metz and an assignment agreement between Metz, his attorneys, and a bank. In the cross-claim Pilié set out an alternative proposal for the distribution of the settlement proceeds that included the payment to Pilié of an extra $100,000 in non-contingent legal fees.
At a hearing in the federal court in New York, Speiser filed an affidavit by Metz supporting the Speiser-Metz distribution proposal and opposing Pilié’s cross-claim, while a member of the Pilié firm appeared and urged that the distribution proposed in the cross-claim be ordered. On August 2, 1985, the court ordered a distribution of the settlement proceeds that generally fob lowed the Speiser-Metz motion and proposed settlement schedule, but also awarded Pilié an additional $100,000 over and above its expenses and share of fees under the contingent fee contract, as Pilié’s “non-contingent fee for professional services.” [1] Pilié did not appeal from the court’s judgment.
Four months later, on December 6, 1985, Pilié filed the present lawsuit in the Civil District Court for Orleans Parish. The case was transferred to the 22nd Judicial District Court for St. Tammany Parish, Metz’s domicile. In its petition Pilié alleged the background facts set forth above and contended that Metz was indebted to it in the sum of approximately $152,000 plus an additional amount in quantum meruit to be fixed by the court. Pilié averred that this debt consisted of three claims: (1) $62,-833.33 as the difference between the amount to which Pilié was entitled under the contingent fee contract and the sum it received pursuant to the federal court order; (2) $89,166.67 for damages sustained by Pilié due to Metz’s breach of the contingent fee contract and the bank assignment agreement; and (3) an amount to be fixed by the court as a reasonable value for legal services rendered by Pilié to Metz in connection with disputes with insurance companies and others resulting from damages to Metz’s home in December 1983 due to severe freezes and bursted pipes.
Metz responded to Pilié’s petition by filing an exception of res judicata. After reviewing the record and hearing arguments of counsel, the trial court sustained the exception and dismissed Pilié’s claims. The trial court reasoned that Pilié’s rights and remedies for a larger contingent fee under both the contingent fee contract and the assignment agreement had been asserted in the diversity proceeding and rejected by the federal court judgment. The court also found that the judgment compensated Pilié for all legal services rendered in. con- *1308 neetion with Metz’s 1983 winter freeze problems.
Pilié appealed and the court of appeal reversed. Pilié & Pilié v. Metz, 521 So.2d 590 (La.App. 1st Cir.1988). The appellate court concluded that Pilié’s contingent fee contract claim was not barred, even though the law firm had asserted that contract as well as the bank assignment contract in the federal litigation, because in the earlier proceeding Pilié had sought only “65 percent of the $650,000 in attorney fees which the parties, excluding itself, had agreed upon” rather than “specific performance of the one-third (⅛) contingent contract itself.” Id. at 593. Similarly, the court of appeal held the damage claim was not barred because “[i]n the New York proceedings, plaintiff sought specific performance of the [assignment agreement], while in the instant suit, plaintiff seeks damages for defendants’ alleged failure to comply with the terms of this agreement.” Id. The court of appeal concluded that the quantum meruit claim was not barred despite the federal court’s award to Pilié of $100,000 in attorney's fees unrelated to the personal injury case because “there is no indication of the nature of these services or that they were the same legal services for which plaintiff now seeks recovery.” Id.
This court granted certiorari to determine whether the correct principles of res judicata had been applied by the court of appeal. 523 So.2d 219 (1988).
2. Choice of Law
The court of appeal assumed that it was free to rely exclusively upon Louisiana res judicata law in holding that plaintiff’s claims were not precluded by the earlier judgment. Because the prior judgment was rendered by a federal court, rather than a court of this state, the question is presented whether a state court may apply its own res judicata law or must follow federally mandated precepts in determining the effect of a judgment rendered by a federal diversity court based on the law of another state.
In determining whether federal law must be applied, the fundamental issue is whether a state is free to regulate the binding authority of a judgment of a federal court established pursuant to the federal Constitution and acts of Congress. The answer to this question is well settled, although it has not been stated as frequently or explicitly as might be expected. No single constitutional or statutory provision explicitly requires the application of federal law, but the principle that a state court must apply federal law in deciding upon at least the central core of res judicata effects of any federal court judgment is immanent within the constitution and laws establishing our federal system. See 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4468 (1981); Degnan, Federalized Res Judicata, 85 Yale L.J. 741, 749 (1976). A constitution that requires state courts to give full faith and credit to the judgments of other state courts could not contemplate that state courts should be free to disregard the judgments of federal courts. 18 Wright, Miller & Cooper, supra, § 4468.
Perhaps because it is so evident that state courts must, as a matter of federal law, give full faith and credit to the proceedings of federal courts, the unbroken line of cases reaching this conclusion offers little clear judicial thought or explanation. See, e.g., Dupasseur v. Rochereau, 88 U.S. (21 Wall.) 130, 22 L.Ed. 588 (1874); Embry v. Palmer, 107 U.S. 3, 2 S.Ct. 25, 27 L.Ed. 346 (1882); Butchers’ Union Slaughter-House & Live-Stock Landing Co. v. Crescent City Live-Stock Landing & Slaughter-House Co., 111 U.S. 746, 4 S.Ct. 652, 28 L.Ed. 585 (1883); Metcalf v. City of Watertown, 153 U.S. 671, 14 S.Ct. 947, 38 L.Ed. 861 (1894); Hancock Nat’l Bank v. Farnum, 176 U.S. 640, 20 S.Ct. 506, 44 L.Ed. 619 (1900); Supreme Lodge, Knights of Pythias v. Meyer, 265 U.S. 30, 44 S.Ct. 432, 68 L.Ed. 885 (1924); Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938). Although the Court has not been clear in explaining the basis for its conclusion, the commentators have demonstrated that, if more articulate support is needed, several constitutional and statutory provisions may be cited as specific authority. See, e.g., 18 Wright, Miller & Cooper, supra, § 4468; Degnan, supra, at 742-49; Note, Erie and *1309 the Preclusive Effect of Federal Diversity Judgments, 85 Colum. L.Rev. 1505,1514-17 (1985).
State courts, generally without discussion, have consistently recognized their obligation to honor federal judgments. See, e.g., Younger v. Jensen, 26 Cal.3d 397, 161 Cal.Rptr. 905, 605 P.2d 813 (1980); Levy v. Cohen, 19 Cal.3d 165, 137 Cal.Rptr. 162, 561 P.2d 252 (1977), cert. denied, 434 U.S. 833, 98 S.Ct. 119, 54 L.Ed.2d 94 (1977); Shell Oil Co. v. Texas Gas Transmission Corp., 176 So.2d 692 (La.App. 4th Cir.1965); Bardo v. Department of Public Welfare, 40 Pa.Cmwlth. 585, 397 A.2d 1305 (1979); Alcantara v. Boeing Co., 41 Wash.App. 675, 705 P.2d 1222 (1985); McCourt v. Algiers, 4 Wis.2d 607, 91 N.W.2d 194 (1956).
A party faced with relitigation of a federal judgment in a state court proceeding may plead the federal judgment as res judicata. If the state court refuses to recognize the proper scope of the federal judgment, the party may appeal through the state courts and ultimately seek review in, the United States Supreme Court. See Toucey v. New York Life Ins. Co., 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100 (1941); Stoll v. Gottlieb, supra; Deposit Bank v. Board of Councilmen, 191 U.S. 499, 515, 24 S.Ct. 154, 48 L.Ed. 276, 282 (1903); Pittsburgh, C.C. & St. L. Ry. v. Long Island Loan & Trust Co., 172 U.S. 493, 510, 19 S.Ct. 238, 244, 43 L.Ed. 528, 534 (1899); 1B J. Moore, J. Lucas & T. Currier, Moore’s Federal Practice ¶0.406[1], at 275 (2d ed. 1988). Alternatively, before final judgment in the state court, the party may seek a federal court injunction against the state proceedings. Parsons Steel v. First Alabama Bank, 474 U.S. 518, 106 S.Ct. 768; 88 L.Ed.2d 877 (1986); Atlantic Coast Line R.R. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970).
Accordingly we conclude that federal law must be applied in determining the basic res judicata effects of the diversity judgment in the present case. For this reason, we set to one side without deciding the question of whether the court of appeal correctly applied Louisiana res judicata law in this ease.
3. The Federal Law of Res Judicata
Our conclusion that federal law supplies the controlling rule requires us to determine the content of that rule. There are competing views among courts and commentators as to the source and substance of the applicable federal rule where, as here, the prior judgment has been rendered by a federal court pursuant to its diversity jurisdiction.
Some authorities maintain that the law of the state in which the federal court sat, applied as surrogate federal law, should determine the res judicata effects of a federal diversity judgment. See, e.g., Provident Tradesmens Bank & Trust Co. v. Lumbermens Mutual Cas. Co., 411 F.2d 88 (3d Cir.1969); Note, supra. Others, however, have argued that the intramural federal law, i.e., the federal common law, should govern the effects of diversity judgments, as is the ease with judgments by federal courts exercising federal question jurisdiction. See, e.g., Aerojet-General Corp. v. Askew, 511 F.2d 710 (5th Cir.), appeal dismissed and cert. denied, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975); Restatement (Second) of Judgments § 87 (1982); Degnan, supra. Yet most who advocate a uniform rule also call for exceptions that would allow a state court, when it is the second forum, to apply its own state rules instead of the federal rules to matters not affecting the core principles of res judicata. Aerojet-General Corp. v. Askew, supra, at 716 n. 8; Restatement (Second) § 87 comment b; Vestal, Res Judi-cata/Preclusion by Judgment: The Law Applied in Federal Courts, 66 Mich.L.Rev. 1723, 1744-45 (1968).
In the present case, however, we need not choose between the competing rules or concern ourselves with the suggested exceptions. This case presents a fundamental question involving a basic element of res judicata: What is the scope of a prior judgment’s preclusion of subsequent claims? On this question, the rules offered by the two possible sources, the intramural federal law and the law of New York (the *1310 state in which the diversity court sat) are identical.
In both the New York and federal systems, a valid final judgment may bar a party from seeking certain remedies whether the party’s right to those remedies was actually litigated in the earlier proceeding or not, if the later-asserted right is found to arise out of the same transaction as the claim or cause of action presented in the earlier proceeding. Federated Dep’t Stores v. Moitie, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981); Reilly v. Reid, 45 N.Y.2d 24, 407 N.Y.S.2d 645, 379 N.E.2d 172 (1978); see also 1B Moore’s Federal Practice, supra, ¶ 0.410[1], at 359; 18 Wright, Miller & Cooper, supra, § 4406. The test for determining the scope of a “claim” or “cause of action” identifies those issues that should have been raised at the earlier proceeding. For the purposes of delineating the scope of a prior claim, New York has adopted a transactional analysis based on that of the Restatement (Second) of Judgments § 24. See, e.g., O’Brien v. City of Syracuse, 54 N.Y.2d 353, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (1981). Section 24 provides:
(1) When a valid and final judgment rendered in an action extinguishes the plaintiff’s claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
(2) What factual grouping constitutes a “transaction”, and what groupings constitute a “series”, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties’ expectations or business understanding or usage.
The majority of federal appellate courts have adopted this transactional analysis as well. See, e.g., Manego v. Orleans Board of Trade, 773 F.2d 1 (1st Cir.1985), cert. denied, 475 U.S. 1084, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986); United States v. Athlone Industries, 746 F.2d 977 (3d Cir.1984); Nilsen v. City of Moss Point, 701 F.2d 556 (5th Cir.1983); Car Carriers, Inc. v. Ford Motor Co., 789 F.2d 589 (7th Cir.1986); Poe v. John Deere Co., 695 F.2d 1103 (8th Cir.1982); Sidney v. Zah, 718 F.2d 1453 (9th Cir.1983); U.S. Industries, Inc. v. Blake Constr. Co., 765 F.2d 195 (D.C.Cir.1985); Young Engineers, Inc. v. United States Int’l Trade Comm’n, 721 F.2d 1305 (Fed.Cir.1983); 1B Moore’s Federal Practice, supra, 0.410[1], at 359; 18 Wright, Miller & Cooper, supra, § 4407; Annotation, Proper Test to Determine Identity of Claims for Purposes of Claim Preclusion by Res Judicata under Federal Law, 82 A.L.R. Fed. 829, 837 (1987). See also Nevada v. United States, 463 U.S. 110, 130 n.12, 103 S.Ct. 2906, 2918 n.12, 77 L.Ed.2d 509, 525 n.12 (1983) (declining to decide the proper standard but referring to the test of § 24 as “a more pragmatic approach”). We read these cases as holding, with at least the tacit approval of the Supreme Court, that the transactional analysis embodied in Restatement (Second) § 24 defines the scope of a claim under the federal common law. Because the Restatement’s transactional approach applies under both New York and intramural federal law, we apply this definition to the facts of this case.
4. Application of the Federal Rule
Applying the foregoing precepts, we conclude that relitigation of Pilié’s personal injury contingent fee contract claim is precluded by the prior federal court judgment. In its cross-claim in the federal proceeding, Pilié “assert[ed] its first priority lien on the proceeds of th[e] settlement under its Contingency Fee Contract,” and the contract itself was attached to Pilié’s petition. This claim was adjudicated, partially recognized and partially rejected by the federal court. As we read the record, the contract claim made by Pilié in its state court petition is identical for the purposes of claim preclusion to this cross-claim against Metz. Even if Pilié asked for relief in a different amount or form in the prior federal court proceeding, as the court of appeal conclud *1311 ed, its claim was nevertheless based on the same contract. Because the right to remedies based on the contingent fee contract asserted by Pilié in the present case undoubtedly arises out of the same transaction as its claim based on that same contract that was adjudicated by court judgment, the right to those remedies is barred by the prior federal court judgment.
By the same token, Pilié’s claim for damages due to Metz’s breach of the contingent fee contract and the bank assignment contract is also barred. Although Pilié did not seek damages for breach of the contracts in the diversity proceeding, it attached a copy of the contingent fee contract and asked for an order “recognizing and enforcing the lien of Pilié & Pilié and compelling payment of all settlement proceeds in accordance with the Assignment Agreement_” As did the court of appeal, we read this as a request for specific performance of the same contracts asserted in the present action. Consequently, it is evident that the claim for damages for breach of the contracts asserted by Pilié in the present state suit seeks a remedy that arises from the same transaction as Pilié’s claim in the federal court proceedings to enforce the contracts and to recover a larger share of the settlement proceeds in accordance with the provisions of the contracts. Because the right asserted in the present case arises out of the same transaction or connected transactions as Pilié’s federal court action, this claim is also barred.
Pilié argues that these claims should not be res judicata because they were specifically reserved by the federal court’s order. It points to that section of the order- that provided for payment of
$216,666.66 to “Speiser & Krause, P.C. and Pilié & Pilié” for the disputed portion of their 28% contingency fees to be jointly held in escrow subject to their mutual agreement in that or a lesser amount or as this or another Court of Competent jurisdiction shall direct.
Pilié contends that this reserved from the judgment the dispute between it and Metz.
Pilié’s argument is not well founded. A complete reading of the court’s order reveals that it dealt with two basic questions: (1) What amount or percentage should be deducted from Metz’s recovery and paid to Pilié and Speiser as the attorney fee to be shared by them? and (2) How should that attorney fee be divided between Pilié and Speiser? The court decided the first question by fixing the fee at $650,000, or 28% of the total recovery. The court did not decide the second question but instead made equal partial distributions of the attorney fee to each lawyer and escrowed the remainder to await their agreement or further litigation. The cited clause reserved only this second question from the scope of the judgment.
The dispute between Metz and Pilié involved only the first question, i.e., what amount should be deducted from Metz’s recovery for attorneys’ fees? This question was decided explicitly, definitely and finally — $650,000, or 28% of recovery was to be the total contingent fee. Metz had no interest in the second question, which arose because of a dispute between the lawyers over how to divvy up the contingent fee. As further evidence of this, the two attorneys later divided the escrowed amount by agreement without Metz’s participation or benefit. Therefore, the court’s failure to decide the second question does not detract from the finality or res judicata effect of its judgment on the first question.
Finally, whether Pilié’s quantum meruit claim is res judicata depends, for the reasons previously discussed, on whether it is a right to a remedy against Metz with respect to “all or any part of the transaction or series of connected transactions” out of which Pilié’s federal court action arose. Unfortunately, the record does not contain any evidence or particularized pleading from which we can determine whether Pilié’s state quantum meruit claim is related to the same transaction, to a part of the same transaction, or to the same series of connected transactions out of which Pilié’s federal action arose. For example, we cannot determine whether Pilié’s right under its employment contract to be *1312 compensated for services in “other legal matters” out of Metz's tort recovery was intended to cover services related to Metz’s personal legal problems, such as his dwelling freeze problem, or whether Pilié presented evidence of its performance of these or similar personal legal services to the federal court in support of its non-contingent fee claim. Under either of these possible scenarios, Pilié’s federal and state remedies might be related to the same transaction or connected transactions; the same may be true for other possible situations. Because the parties were unaware of the applicability of federal law and the concomitant importance of introducing evidence in this regard, in the interest of justice we will remand the case to the trial court for an evidentiary hearing and a new ruling based thereon.
5. Jurisdiction of the Federal Court
Pilié avers that the federal court judgment should not be given preclusive effect because the federal court lacked jurisdiction, but it does not present any real argument or explanation. In our opinion, this contention is without merit. Pilié waived any objection to personal jurisdiction by appearing in the New York proceedings. Insurance Corp. of Ireland v. Compagnie de Bauxites de Guinee, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); McDonald v. Mabee, 243 U.S. 90, 37 S.Ct. 343, 61 L.Ed. 608 (1917). Furthermore, Pilié raised the jurisdictional issue in its federal court pleadings and the court implicitly rejected it. If a party appears and contests a court’s jurisdiction, the court has the power to decide the jurisdictional issue. Its determination may be reviewed only by appeal, and the judgment may not be collaterally attacked. Pilié did not appeal. In this situation, the jurisdiction issue itself is res judicata, and the prior judgment is entitled to full faith and credit. Durfee v. Duke, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963); Stoll v. Gottlieb, supra; Davis v. Davis, 305 U.S. 32, 59 S.Ct. 3, 83 L.Ed. 26 (1938); see also 1B Moore’s Federal Practice, supra, ¶ 0.405, at 209-10.
Even if Pilié had not waived its right to contest subject-matter jurisdiction, the contention would be without merit because the federal court clearly had jurisdiction. It is well settled that a federal court may resolve controversies over attorneys’ fees when the dispute arises from litigation before it, under both the court’s ancillary jurisdiction and its inherent power to regulate attorneys who practice before it. See, e.g., Cluett, Peabody & Co. v. CPC Acquisition Co., 863 F.2d 251 (2d Cir.1988); Pay Television of Greater New York, Inc. v. Sheridan, 766 F.2d 92 (2d Cir.1985); American Federation of Tobacco-Growers v. Allen, 186 F.2d 590 (4th Cir.1951); Iowa v. Union Asphalt & Roadoils, Inc., 409 F.2d 1239 (8th Cir. 1969); Jenkins v. Weinshienk, 670 F.2d 915 (10th Cir.1982). This jurisdiction continues even after the original dispute has gone to judgment or been settled. Novinger v. E.I. DuPont de Nemours & Co., 809 F.2d 212 (3d Cir.), cert. denied, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987); Sherrier v. Richard, 600 F.Supp. 527 (S.D.N.Y.1984). In addition, where the dispute concerns fees to be paid out of proceeds of the litigation, the court’s ancillary jurisdiction arises from its authority to control the distribution of those proceeds. See, e.g., Grimes v. Chrysler Motors Corp., 565 F.2d 841 (2d Cir.1977).
Pilié and Metz entered into the contingent fee contract in order to bring the New York litigation. As part of the same transaction, Metz agreed to pay Pilié for “other legal services” with an additional fee to be paid out of Metz’s personal injury recovery from that litigation. The dispute over the amount of attorneys’ fees owed by Metz thus arose out of the New York litigation, and the federal court had subject matter jurisdiction to decide the issues presented both under its inherent power to control the fees of attorneys practicing before it and under its ancillary jurisdiction. Because the dispute concerned the distribution of the settlement proceeds, the court also had the power to dispose of the questions by virtue of its control over the distribution of the proceeds.
*1313 Decree
The judgment of the court of appeal is reversed. Pilié’s claim to enforce the contingent fee contract and claim for damages for breach of contract are dismissed on grounds of res judicata. The case is remanded to the trial court with instructions to receive evidence and decide whether Pilié’s non-contingent fee claim is res judi-cata in accordance with the opinion of this Court.
REVERSED: REMANDED IN PART.
DIXON, C.J., dissents with reasons.

. The court ordered that Pilié be paid $100,000 as a fee for services rendered Metz not covered by the contingent fee contract, that a total of $650,000 (approximately 28% of the recovery) be paid in attorneys' fees under the contingent fee contract for services performed in the helicopter crash litigation, and that the $650,000 fee be divided as follows: $216,666.67 to Pilié outright, $216,666.67 to Speiser outright, and $216,-666.66 in escrow to be divided by Pilié and Speiser according to future agreement or litigation. Although Pilié, had in the meantime filed suit in federal court in New Orleans against Speiser over their relative shares of the fee, Pilié and Speiser later agreed to a compromise with Pilié receiving $152,499.99. All told, Pilié received $609,166.66 from the settlement ,proceeds, consisting of $369,166.66 in contingent fees, $100,000 in non-contingent fees, $85,000 for repayment of a personal loan to Metz, and $55,000 in costs advanced.