STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-849


VALERIE B. BANDY

VERSUS

PATRICK T. BANDY


**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 185,163-F
HONORABLE GEORGE CLARENCE METOYER, JR., DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and James T. Genovese, Judges.


GENOVESE, J., CONCURS IN THE RESULT.


                                        REVERSED AND RENDERED.

Randal Bryan Tannehill
P. O. Box 3246
Pineville, LA 71361-3246
Telephone:  (318) 641-1550
COUNSEL FOR:
        Plaintiff/Appellant - Valerie B. Bandy

Patrick T. Bandy
In Proper Person
118 Pebble Creek Lane
Terrell, TX 75160

**THIBODEAUX, Chief Judge.**

This case involves a visitation dispute between the plaintiff-appellant, Valerie B. Bandy (Valerie), and the defendant-appellee, Patrick T. Bandy (Patrick). Valerie, a Louisiana resident, is the sole custodial parent of the parties' minor son, Mark Bandy, who will be thirteen years old in December 2007. Patrick, a Texas resident, currently has seven weeks of unsupervised visitation in the summer, with standard visitation on alternating weekends and holidays. Based upon events occurring in Texas in the summer of 2006, Valerie filed a Rule to Terminate/Modify Custody and Visitation in September 2006.

While Valerie refers to "custody" in her rule, and the trial court's minute entry in October 2000 refers to "custody" with Patrick in Texas in June and July, the *judgments* in the record are clear; the sole custody awarded to Valerie in 1996 has never been disturbed, and the issues herein are about a change in Patrick's *visitation*, not a change in custody. Following a bench trial on the rule on March 5, 2007, Valerie's request for termination or modification of visitation was denied. She appeals. For the following reasons, we reverse the judgment of the trial court and render an order modifying Patrick's visitation to supervised visitation.

I.

**ISSUES**

We must decide:

(1)   whether the trial court erred in admitting into evidence two police reports and two drug test results offered by the defendant-appellee, Patrick Bandy; and

(2)   whether the trial court erred in failing to terminate or modify the father's visitation in light of events occurring in Texas in 2006, as testified to by the minor child, and as confirmed by his mother.

II.

## FACTS AND PROCEDURAL HISTORY

The parties were married in December of 1993 and were living in Dallas, Texas with their son, Mark, born in December 1994. In April of 1996, Valerie separated from Patrick and moved with her sixteen-month-old son back to her home in Rapides Parish, Louisiana. In August 1996, alleging cruel treatment by Patrick, Valerie filed for divorce in Rapides Parish. Following a hearing in December 1996, Valerie was granted sole custody of Mark, and Patrick was granted supervised visitation only in Louisiana. Patrick was ordered to pay $300.00 per month in child support. Due to Patrick's six-month arrearage in child support payments, Valerie obtained an order for Support Enforcement Services through the Louisiana Department of Social Services in May of 2000. Three months later, in August of 2000, Patrick filed a rule seeking standard visitation, stating in the rule that he had remarried, was holding a responsible job in Texas, and that he would submit to a psychological evaluation if the court required it.

Valerie filed an answer to the rule, stating that Patrick had visitation privileges that he was not exercising. She stated that Patrick had seen Mark less than sixteen times over the previous four-year period and had never kept Mark for over five hours at a time. Valerie further stated that Patrick filed his rule for more visitation in retaliation against her for turning the support arrearage over to Louisiana Support Enforcement Services. Valerie averred that the same conditions existed in October 2000 that existed in April 1996 when she obtained sole custody of Mark, and she specified those conditions in detail as reasons for not expanding visitation in favor of Patrick. She described Patrick as violent and mentally and emotionally incompetent to care for Mark. Valerie stated that she had left Texas with Mark in

April of 1996 after Patrick punched the sixteen-month-old child in the head with his fist as hard as possible after the teething baby bit his father on the arm.

Patrick's rule for visitation was tried on October 23, 2000, apparently with some favorable testimony on Patrick's behalf, because his request for standard visitation was granted. It included standard, unsupervised visitation at Patrick's residence in Texas, near Dallas, on weekends and holidays, with visitation in Texas for the months of June and July of each year, subject to a week of summer visitation with Valerie during that time. That judgment was signed in December 2000.

In the summer of 2006, several events occurred during Mark's summer visitation with Patrick that frightened Mark. There were fights between Mark's step-mother, Demetra, and Patrick over Patrick's drug use, culminating on July 19, 2006 with Patrick's threats against Mark, Mark's frantic call to his mother in Louisiana, his 911 call to the police in Texas, and Valerie's drive to Texas to retrieve Mark at 1:30 in the morning. Patrick did not attempt visitation or try to contact Mark until September 2006. Valerie indicated that Mark was not at home and asked Patrick for an explanation of the events in July. Patrick responded that it did not concern her. Valerie then filed her Rule to Terminate/Modify Custody and Visitation.

The matter was tried on March 5, 2007, with Mark, age twelve, testifying in court that he had seen the drugs in Patrick's truck, that his father was acting strange, that he was afraid of his father, and that he did not want to go back to Texas for visitation with his father.

At trial, Patrick, representing himself, introduced a police report indicating that no drugs were found at Patrick's residence in Texas on the night of the July 19, 2006 incident. He introduced two additional documents indicating negative drug test results (hair and urine) on a court-ordered drug test on November 20, 2006.

Patrick's fourth exhibit was an incident report dated November 22, 2006 wherein Patrick filed a complaint against Valerie in Alexandria for not having Mark available for visitation. These were the only documents offered as exhibits. Counsel for Valerie objected to the introduction of these reports based upon a lack of authentication and the lack of foundation for the reports.

The trial judge admitted the documents but lectured Patrick at length, indicating that he believed that there was indeed drug use by Patrick, and further indicating that the negative test results only indicated that he was not using drugs for a certain period of time. Ultimately, the trial judge denied Valerie's request for modification of custody and visitation, stating that he had insufficient evidence of drug use and possession.

## III.

## LAW AND DISCUSSION

### Standard of Review

In child custody matters, the determinations of the trial judge are entitled to great weight, and his discretion will not be disturbed on appellate review in the absence of a clear showing of abuse. *AEB v. JBE*, 99-2668 (La. 11/30/99), 752 So.2d 756. However, where there has been an error of law, a de novo review is required. *Evans v. Lungrin*, 97-541, 97-577 (La. 2/6/98), 708 So.2d 731. In *Evans*, the Supreme Court discussed the appellate review standard where the trial court has committed legal error. The Supreme Court stated:

> [W]here one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine a preponderance of the evidence. A legal error occurs when a trial court applies incorrect principles of law and such errors are

4

prejudicial. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo.

*Evans*, 708 So.2d at 735 (citations omitted).

## Burden of Proof

In the present case, Valerie was granted sole custody of Mark following a hearing on the matter in December 1996, and Patrick was granted supervised visitation in Louisiana only. In October 2000, Patrick requested and obtained standard, unsupervised visitation in Texas, after a hearing. The trial court later referenced the October 2000 hearing erroneously in his minute entry as a "custody" hearing. However, the issue was visitation, as Patrick did not file for custody.

Due to the events that occurred in Texas in the summer of 2006, Valerie sought to terminate or modify the visitation with Patrick in Texas, although she used the terminology "Custody & Visitation" in her rule. In denying Valerie's request, the trial court erroneously stated that it would not disturb the original "custody" order. However, his reference was to his October 2000 judgment on visitation. The sole custody granted to Valerie in 1996 has never been disturbed. Accordingly, the issue herein is Valerie's rule to terminate or modify Patrick's "visitation" due to events that occurred in the summer of 2006. Hence, the controlling article is La.Civ.Code art. 136, which states as follows:

Art. 136. Award of visitation rights

A. A parent not granted custody or joint custody of a child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would not be in the best interest of the child.

5

Revision comment (b) to La.Civ.Code art. 136 states as follows:

> (b) The first paragraph of this Article restates the test for parental visitation established in the leading case of Maxwell v. LeBlanc, 434 So.2d 375 (La.1983). That case set forth a comprehensive body of rules governing visitation, all of which were jurisprudential in nature, because Louisiana did not have statutory provisions concerning child visitation prior to 1988. (Acts 1988, No. 817 enacted prior C.C. Art. 146.1, later redesignated as C.C. Art. 132). Nevertheless, this Article is not intended to affect the Maxwell case, except for the court's declaration that visitation is a "species of custody," which is no longer strictly true, since visitation has an independent basis under this Article.

In *White v. Fetzer*, 97-1266 (La.App. 3 Cir. 3/6/98),707 So.2d 1377, *writ denied,* 98-931 (La. 5/15/98), 719 So.2d 466, a panel of this court discussed Article 136, revision comment (b), and the burden of proof of the party seeking to modify visitation as follows:

> In *Bergeron v. Bergeron*, 492 So.2d 1193 (La.1986), the supreme court stated that in a case involving modification of a considered decree of permanent custody, the burden of proof for the petitioning party is to show that the continuation of the present custody is so deleterious to the child so as to justify the modification, or that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. *Id.* at 1200. . . .
>
> However, visitation is not strictly a "species of custody" and, instead, has an independent basis in the Civil Code. La.Civ.Code art. 136, Revision Comments 1993(b). A change in visitation rights is not as substantial as a change in actual physical custody. *Mosely v. Mosely*, 499 So.2d 106 (La.App. 1 Cir. 1986), *writ denied*, 505 So.2d 1138 (La.1987). In such cases, a showing that the change in visitation is in the best interest of the child is sufficient. *Bennett v. Bennett*, 95-152 (La.App. 3 Cir. 5/31/95); 657 So.2d 413.

*Id*. at 1380.

We also note that the Louisiana Supreme Court in *Maxwell* stated that the right of visitation for a non-custodial parent is a natural right with respect to his

6

children. However, the court further stated that the right of visitation is not without its limitations, and that the "rights of any parent are always subservient to the best interests of the child." *Maxwell*, 434 So.2d at 377.

Under La.Civ.Code art. 136, the parent seeking to restrict or deny access or visitation of the other parent to the child has the burden of proving that visitation would not be in best interest of the child. *Percle v. Noll*, 93-1272 (La.App. 1 Cir. 3/11/94), 634 So.2d 498; *Maxwell*, 434 So.2d 375. Accordingly, since Valerie filed the rule regarding a change in visitation, she has the burden of proving that it is in the best interest of Mark that Patrick's visitation be terminated or modified.

The events that gave rise to Valerie's rule to modify the existing arrangement occurred in Texas in the summer of 2006. They include Patrick's taking his eleven-year-old son with him and driving four hours to procure drugs, then an incident wherein Patrick and Mark's step-mother, Demetra, fought over Patrick's drug use, resulting in her banishment of Patrick from the house and Mark's having to stay in a motel with his father. The culminating event occurred on July 19, 2006, when another fight between Demetra and Patrick over Patrick's drug use resulted in a family fight that scared Mark and caused Valerie to drive six hours to pick him up from a dark house at 1:30 in the morning.

Twelve-year-old Mark testified in court at the trial of this matter. He stated that on the evening of July 19, 2006, he went outside to help his step-mother, Demetra, bring the groceries inside and that she told him then that Patrick was smoking marijuana. She showed Mark the leather pouch with the drugs inside. Mark specifically testified that he saw the drugs in the leather pouch in Patrick's truck. Mark further testified that Demetra told him to go inside and call his mother in Louisiana. However, Patrick overheard this exchange, and a loud argument erupted

7

between Demetra and Patrick. Mark tried to call his mother, but Patrick disconnected the phone. Demetra gave Mark her cell phone. Mark locked himself in the bathroom with the cell phone, but Patrick "jimmied" the door and took the phone away from him. Mark stated that his step-mother then told him to take his one-year-old half sister out of the house due to the ruckus.

Mark testified that he went to a neighbor's house, borrowed a phone, and called his mother, Valerie. Valerie instructed him to call 911 and to stay where he was until she could get there. Patrick then came to the neighbor's house and threatened to beat Mark if he did not come back in the house with Patrick. Mark testified that he was afraid for his safety and ran down the street. Patrick chased Mark with the car and eventually got him back into the house. Mark testified that Patrick then told him that Patrick's mother had been murdered, that his father died of AIDS, and that smoking marijuana made him feel better. Patrick further told Mark that he had gotten the drugs a few weeks before when he and Mark had gone to Houston to meet Patrick's brother at a sporting goods store. Patrick had told Mark at the time that the trip was for the purpose of signing papers for his brother but now admitted to Mark that that is where and when he got the drugs. Mark further testified that during the ruckus on July 19, 2006, Demetra flushed the drugs down the toilet to keep the baby from finding them before the police arrived in response to Mark's 911 call.

The July 19, 2006 police report, introduced by Patrick, indicates that an eleven-year-old boy called and said that his dad had been smoking pot since July 4th, that the boy was concerned for the infant in the home, and that he wanted his father arrested. The police officer reported that she met with the boy and then the father, who denied doing drugs. She also reported that she went into the residence and found

8

no signs of drugs or drug activity. It was this police report, as well as the negative drug test results and the incident report on visitation, that Patrick offered into evidence during the trial; and it was these reports that the trial judge referenced at the end of trial when he ruled from the bench that he had insufficient evidence of drug use or possession.

Valerie contends that the trial court erred in admitting the drug test results and police reports, which lacked authentication and foundation, and that the trial court erred in not considering the testimony of the minor child, Mark. We agree. The record contains no analysis of the facts gathered and no written reasons for the judgment appealed from. It appears from the record that the trial judge disregarded the eye-witness testimony of Mark, who saw the drugs first hand and observed his father's strange demeanor, and that the trial court relied solely on the police report and the drug test results, which did not confirm drug activity, to conclude that he had insufficient evidence of drug use. Importantly, the trial court's admission of, and reliance upon, the drug test results and the police reports was legal error.

More specifically, without authentication and a proper foundation, the drug test results should have been excluded as hearsay under Article 803(6) of the Code of Evidence, and the police reports should have been excluded under Article 803(b)(I). Article 803 provides that certain records are not excluded from evidence as hearsay because they are exceptions to the hearsay rule. The drug test results fall under the business record exception *if* they are properly authenticated by a qualified foundation witness, which Patrick's documents were not. Article 803 states that business records are excepted from hearsay under the following circumstances:

> (6) Records of regularly conducted business activity. A memorandum, report, record, or data compilation, in any form, including but not limited to that which is stored by the use of an optical disk imaging system, of acts, events,

9

conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if made and kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make and to keep the memorandum, report, record, or data compilation, *all as shown by the testimony of the custodian or other qualified witness*, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. This exception is inapplicable unless the recorded information was furnished to the business either by a person who was routinely acting for the business in reporting the information or in circumstances under which the statement would not be excluded by the hearsay rule. The term "business" as used in this Paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit. Public records and reports which are specifically excluded from the public records exception by Article 803(8)(b) shall not qualify as an exception to the hearsay rule under this Paragraph. (Emphasis added).

In the present case, Patrick represented himself and introduced the drug test results into evidence without calling a single witness to testify as to their authenticity and to the practices under which the information was gathered. Patrick indicated that they were faxed to the court by the laboratories themselves, but there was no testimony regarding the collection process or the chain of command, and no testimony identifying the defendant, Patrick, as the contributor of the hair and urine samples. The Louisiana Supreme Court in *State v. Juniors*, 03-2425 (La. 6/29/05), 915 So.2d 291, *cert. denied*, *Juniors v. Louisiana,* 547 U.S. 1115, 126 S.Ct. 1940 (2006), affirmed a trial court's refusal to admit drug test results, stating as follows:

> The witness laying the foundation for the admissibility of business records need not have been the preparer of the records; however, the witness must be familiar with and able to testify from personal knowledge about the bookkeeping and accounting procedures of the entity whose business records are sought to be introduced. *Cole Oil & Tire Co., Inc. v. Davis*, 567 So.2d 122, 129 (La.App. 2 Cir. 1990). "Under Art[icle] 803(6), it is essential that a custodian or other qualified witness testimonially explain the record-keeping procedures of the

business and thus lay the foundation for the admissibility of the records." *Id.* If the foundation witness cannot vouch that the requirements of the Code of Evidence have been met, the evidence must be excluded. *Id. See also*, *State v. Borne*, 96-1130 (La.App. 4 Cir. 3/19/97), 691 So.2d 1281, *writ denied*, 97-1021 (La. 10/3/97), 701 So.2d 197 [*cert. denied, Borne v. Louisiana*, 523 U.S. 1009, 118 S.Ct. 1196 (1998)].

In this case, Wilson, the secretary of Fleet Boats, Inc. who testified that she handled the accounting and most of the paperwork for the company, provided the necessary predicate for introduction of certain business records of the company. She identified Williams' W-4 form, completed job application, and pink slip as Fleet Boats records that were generated and kept as part of the personnel file. However, when the drug test form from the independent laboratory was presented to the witness for identification, she acknowledged that report was generated by the independent laboratory, and not by Fleet Boats. Further, she was unable to explain how the notation "Positive marijuana" came to be handwritten on the bottom of the form or by whom. Under such circumstances, it is clear the necessary predicate was not established for admissibility of the Corning Laboratories form under the business records exception to the hearsay rule.

. . . Wilson had no personal knowledge as to the procedures and processes of the laboratory . . . . She was unable to verify that the [handwritten notation] was made by persons who had personal knowledge of the test or of the test results. In short, she was in no position to testify as to the reliability or trustworthiness of the report. As a result, the report was properly excluded by the trial court. *See and compare*, *State v. Borne*, [691 So.2d 1281] (Results of defendant's pre-employment drug test not admissible under business records exception to hearsay rules absent testimony as to who had custody of the result, who conducted the drug testing, and whether the results were kept as records in the regular course of business); *Ruddock v. Jefferson Parish Fire Civil Service Bd.*, 96-831 (La.App. 5 Cir. 1/28/97), 688 So.2d 112 (Results of drug test properly admitted under business records exception to hearsay rule where associate director of biomedical laboratory performing the test testified he was responsible for the day-to-day operations of the laboratory, that he was familiar with the procedures and processes conducted at the laboratory upon receipt of a specimen for testing, and provided a detailed explanation of the test results.).

*Juniors*, 915 So.2d at 327-28.

In the present case, no testimony was given regarding the procedures used by the laboratories. Patrick simply denied current drug use and handed in his exhibits. The report from Omega Laboratories in Ohio indicates that a "Hair 5 Drug Panel" was requested. This exhibit consisted of one page. It was printed from an internet web site on November 22, 2006, two days after the sample was collected, and it indicated at the top right corner that this was "Page 12 of 14." The report notations stated as follows, "0.25 - 0.75 inches in length (approximately 0-15, 45 day time frame)." We have no way of knowing what the parenthetical phrase means, as no explanation was given regarding the contents of the report. The report further indicates that tests were performed for the five major drug classes. The results block contains the word "negative" and states that, "A negative result indicates that none of the drugs listed above were detected at a concentration greater than their listed cutoff levels." Likewise, this process and the numbers assigned as "cutoff" levels were not discussed or explained in any way. The only information about the donor is the name "Patrick Bandy" and a social security number. The specimen donor is not described in the document, and there is no indication as to what kind of identification was required to confirm the identity of the donor.

We are assuming that the second document from One Source Toxicology in Pasadena, Texas is the result of a urine test, although nothing on the form indicates what was tested, as the form is entitled simply "Result Form." This report was also printed from the internet on November 22, 2006, two days after the sample was collected and one day after it was received. Again, no testimony was presented to authenticate or explain the report, the process, the chain of custody, or the identity of the donor. Without a proper foundation witness to authenticate these drug test

reports, they are inadmissible, and the trial court committed legal error in allowing them into evidence.

The police reports are inadmissible because they are public records specifically excluded from the exceptions to the hearsay rule at La.Code Evid. art. 803(8)(b), which provides as follows:

> (b) Except as specifically provided otherwise by legislation, the following are excluded from this exception to the hearsay rule:

> (i) Investigative reports by police and other law enforcement personnel.

> . . . .

> (iv) Factual findings resulting from investigation of a particular complaint, case, or incident, including an investigation into the facts and circumstances on which the present proceeding is based or an investigation into a similar occurrence or occurrences.

Because we have found legal error on the part of the trial court in allowing the inadmissible documents into evidence, the "abuse of discretion" standard does not apply. Rather, we must conduct a de novo review of the entire record on appeal in order to determine the best interest of the child, Mark. *Evans*, 708 So.2d 731.

Mark, who was twelve years old when he testified and who will be thirteen in December 2007, stated that he felt unsafe and was afraid of his dad. He specifically stated that he did not want to return there, even if his father cleaned up. When pressed, Mark stated that perhaps if there were a way to prove that his dad had cleaned up he would consider going back, but he would not take his dad's word for it. He stated that his father was a drug addict, that addicts always return to drugs, and that he did not want to be around drugs. He further stated that his dad talked irreverently about his mother, in "bad" ways that he just disregarded. On one

occasion, Patrick took Mark out to eat and then read a court transcript to him in the restaurant, attempting to turn him against the mother. Mark stated that his mother did not talk about Patrick. Patrick testified at trial that he thought exposing Mark to his trial testimony was appropriate under the circumstances and that he would do it again.

Mark further testified that his dad had only tried to contact him once between the incident on July 19, 2006, and the trial on March 5, 2007, and that there had been no cards or letters, which was confirmed by his mother in her testimony. Patrick testified that he had tried to contact Mark five times and that there had been cards and presents sent (Mark's birthday is in December, near Christmas), but he offered no proof to that effect.

Patrick further stated that Demetra had not found marijuana but had found "spices" that he was gathering for a spice rack that he was building her for Christmas. However, he stated that the spices were in bags, not a leather pouch.

In *Rutledge v. Rutledge,* 41,792 (La.App. 2 Cir. 12/13/06), 945 So.2d 307, the court considered a thirteen-year-old to be of an age to have her reasonable preferences considered. In *Hensgens v. Hensgens*, 94-1200 (La.App. 3 Cir. 3/15/95), 653 So.2d 48, *writ denied,* 95-1488 (La. 9/22/95), 660 So.2d 478, we reversed the judgment of the trial court which gave little consideration to the preferences of two boys, ages eight and ten, where the record indicated that they organized their thoughts and expressed themselves clearly. One expert in that case stated that the preference of those children should be considered very heavily. The other expert stated that the threshold age should be fifteen but could be pushed down to thirteen if the child was mature and of a higher intelligence. We believe that competency and maturity, not age, are the true determining factors. In the present case, the trial court told Mark's

parents that Mark was a very smart child. That is clearly supported by his testimony, his vocabulary, and his word usage.

Mark's mother, Valerie, also testified at the trial of this matter. She stated that she had worked for two different school boards in Louisiana, one for five years, and the other for six years, that her last position was that of grant writer and manager for Rapides Parish Schools, and that she had just gotten a new position as a School District Instructor for the Renaissance Home for Youth. The record indicates a very loving and affectionate relationship between Mark and Valerie. Valerie testified that it was difficult but she did not disparage Patrick in front of Mark. She testified that on the night of the incident in July 2006, Mark called her when she was at her mother's house and said, "Mom, please help me," and the phone went dead. He eventually called her back and told her the story that he testified to in court. Valerie called the police in Terrell, Texas and started driving there with her mother in a lightning storm. When she arrived around 1:30 a.m., Mark came out of the dark house with his suitcases, and there appeared to be no one else there.

Valerie also testified that Mark had told her about the earlier incident when Patrick and Demetra fought about Patrick's drug use, and Demetra threw Patrick out of the house. Patrick took the baby, and Demetra pleaded with him to bring the one-year-old back. Patrick then took Mark to a hotel where they stayed for a period of time. The record is unclear as to the length of the hotel stay. Regarding this event, Patrick testified that this argument had taken place closer to a month before, and that he had decided to go to a motel to get out of the house. The testimony from the trial of this matter reveals that Mark is a child who wants a normal life free of drugs and dysfunctional behavior, the kind of adolescent that many parents

15

pray for, and that it is the father who is dragging his own son into an unstable, emotional quagmire.

Given the totality of the testimony and the record before us, we cannot help but believe that Patrick has reverted to behavior that prevents him from providing a stable environment for his son Mark and that negatively impacts the time he should be allowed to spend with Mark, even for visitation. Accordingly, we reverse the judgment of the trial court and set visitation as follows:

> Patrick Bandy shall be entitled to supervised visitation privileges on alternate weekends, commencing on the weekend following the issuance of this court's opinion, from 9:00 a.m. Saturday and Sunday to 7:00 p.m. Saturday and Sunday in the State of Louisiana.
>
> In even-numbered years, Patrick Bandy shall have supervised visitation from 9:00 a.m. to 7:00 p.m. on the following holidays: Easter, Thanksgiving, and Christmas in the State of Louisiana.
>
> Patrick Bandy shall have supervised visitation on Father's Day from 9:00 a.m. to 7:00 p.m. in the State of Louisiana.
>
> The visitation privileges shall be exercised under the supervision of an adult who shall be mutually selected by Valerie and Patrick Bandy. Patrick Bandy shall notify Valerie Bandy at least seventy-two hours preceding the exercise of his visitation privileges if he cannot exercise visitation privileges at the scheduled time.

IV.

## CONCLUSION

Based upon the foregoing, the judgment denying Valerie Bandy's request for modification of visitation is reversed due to the trial court's legal error in receiving into evidence and relying upon inadmissible documents. After a de novo review of the record in its entirety, we find that it is in the best interest of the minor

16

child, Mark Bandy, to limit the visitation privileges of Patrick Bandy. Accordingly, we hereby enter an order of visitation for Patrick Bandy as follows:

> Patrick Bandy shall be entitled to supervised visitation privileges on alternate weekends, commencing on the weekend following the issuance of this court's opinion, from 9:00 a.m. Saturday and Sunday to 7:00 p.m. Saturday and Sunday in the State of Louisiana.
>
> In even-numbered years, Patrick Bandy shall have supervised visitation from 9:00 a.m. to 7:00 p.m. on the following holidays: Easter, Thanksgiving, and Christmas in the State of Louisiana.
>
> Patrick Bandy shall have supervised visitation on Father's Day from 9:00 a.m. to 7:00 p.m. in the State of Louisiana.
>
> The visitation privileges shall be exercised under the supervision of an adult who shall be mutually selected by Valerie and Patrick Bandy. Patrick Bandy shall notify Valerie Bandy at least seventy-two hours preceding the exercise of his visitation privileges if he cannot exercise visitation privileges at the scheduled time.

**REVERSED AND RENDERED.**